by no means frank and ingenuous. When asked the meaning of his letter of May 16, 1892, he testified that he did not remember the letter. On being further pressed to say what he meant when he wrote, "True, you have a right to ask for it," he answered, "The supposition is she asked for money in the letter." When asked whether he had any transaction with his mother-in-law except the note in suit, he replied he did not think that was a business transaction with her at all. Then, in answer to a repetition of the question, he said, "Money transaction; yes." What the money transaction was is not stated. The jury were not obliged to credit this statement of the defendant; nor was the plaintiff, because she put the defendant on the stand, precluded from asking the jury to disbelieve his testimony in this respect. On the whole, we think the case should have been submitted to the jury to determine, as matter of fact, whether the defendant had paid interest on the note within six years prior to the decease of the plaintiff's testator.

The judgment should be reversed, and a new trial granted, costs to abide the event. All concur.

---

(28 App. Div. 52.)

### LAWSON v. EGGLESTON.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1898.)

**1. CIVIL DAMAGE LAWS—EVIDENCE—SUFFICIENCY.**

Deceased, who, when sober, was on friendly terms with his family, and contributed to its support, shot his wife in the face, and then killed himself. He was in a delirious state, produced by the use of liquors, and for 11 days had been on a debauch, during which he had visited defendant's bar daily, and purchased liquor; a bottle partly full of liquor, similar to one purchased from defendant the day before, being found on him. *Held* sufficient to sustain a verdict against defendant in an action by the wife, under Acts 1873, c. 646, § 1, providing that a wife or other person injured in means of support by any intoxicated person shall have a right of action against any person who shall, by selling intoxicating liquors, cause the intoxication, in whole or in part.

**2. SAME—DEFENSES.**

Under Act 1873, c. 646, § 1, permitting a wife to recover of one who furnished liquor to her husband, where it contributed to the intoxication which resulted in his death, it is immaterial that the husband purchased liquors of others also.

**3. SAME—DAMAGES—EVIDENCE.**

In an action by a wife against one who furnished her husband with liquor which contributed to the intoxication that resulted in his death, evidence that deceased had on former occasions drank at defendant's bar, and had had protracted sprees, to defendant's knowledge, is competent on the question of damages.

Appeal from trial term.

Action by Sarah Lawson against William Eggleston. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

The following is the opinion of LAMBERT, J.:

The plaintiff is the widow of Edward Lawson, deceased, and resided with and was supported by him up to the time of his death. The deceased, as shown by the evidence, had no property, and when sober was industrious, and

mindful of his duty to provide for the plaintiff and his family, and had an earning capacity of from two to four dollars per day. About the 1st of December, 1890, he commenced a drunken debauch, which continued until the morning of the 12th, when, without apparent provocation, he shot the plaintiff in the face by the discharge of a revolver, and within a few minutes thereafter, with suicidal intent, killed himself by a discharge of the same weapon. It may be inferred from the history of the lives of the plaintiff and her husband that, when sober, he entertained and observed an affectionate regard for the plaintiff and his family, and devoted a portion of the results of his labor to their support. The allegations of the complaint lay the foundation for a recovery upon the theory that the shooting, by the deceased, of the plaintiff and himself, was impelled by intoxication, produced wholly or in part by liquor sold by the defendant. The answer contains appropriate denials to put in issue the sale to, and the intoxication of, the deceased, and the injury and damage as a consequence of intoxication. The principal ground of this motion as a legal justification for interference with the result of the trial is that the verdict is against the weight and probative force of the evidence in the following particulars: (1) The deceased was not intoxicated at the time of the commission of the act made the basis of recovery; (2) the defendant did not sell or give to the deceased any liquor or strong drink set out in the complaint or otherwise; (3) conceding he did sell, as sought to be shown by the plaintiff's evidence, the sale was so remote in point of time as not to have contributed to the intoxication alleged in the complaint; and (4) the evidence does not permit the inference of fact that the acts of shooting were a consequence of intoxication.

The first point made is without merit. A number of witnesses for the plaintiff, apparently without interest in the result of the litigation, and free from prejudice against the defendant, testified unequivocally that the deceased was intoxicated on the day, and immediately before, the shooting took place. These witnesses were qualified by intelligence, personal observation of the deceased on the morning in question, and from long acquaintance with him, his conduct and personal appearance, both drunk and sober, to express an opinion. The proof afforded by this evidence is not the entire strength of the plaintiff's case on the subject. The fact that the deceased had been on a debauch for upwards of a week, and subject to the influence of liquor during the entire time, is made to appear by uncontradicted evidence, which may be properly taken as confirmatory of the evidence given by the witnesses. Several witnesses introduced by the defendant expressed the opinion that he was not intoxicated on the morning in question. This evidence might be, and very likely was, disregarded by the jury as unworthy of adoption to meet the case made by the plaintiff, as it was based upon a casual and inattentive observation of the deceased shortly before the shooting. The verdict is abundantly supported in respect to the disputed question of the intoxication of the deceased.

The second suggestion challenges careful consideration. That a conflict arose upon the evidence in respect to whether a sale of liquor was made to the deceased is undeniable, and therefore, within the well-settled general rule, the solution of that question was for the jury. Precedents are numerous, however, recognizing and well defining the authority and duty of the trial justice or court, on review of facts, in the interest of justice to disregard and set aside the verdict of a jury. The authority thus conferred should not be exercised and applied unless it clearly appears that the weight and convincing force of the proof is such that the verdict is the result of misapprehension, prejudice, passion, or that the jury adopted some erroneous method of calculating the weight of the evidence. The application of any other rule to a case presenting purely questions of fact would ignore the province of a jury in the administration of justice, under the laws and constitution of the state. Nor should the result reached by the jury be assailed or condemned in consequence of the inability of the plaintiff to produce as great a number of witnesses as the defendant, because the intrinsic value and quality of evidence has its foundation in statement and conduct consistent with experience, and the logical relation that a known fact has to the probable existence of another. Circumstances necessarily make a part

of the proof of human transactions, and by resort thereto the value of sworn evidence may be ascertained. Therefore, if the inferences and deductions permitted by a fair anaylsis of the testimony and circumstances tend to corroborate the evidence given by the plaintiff's witnesses in a substantial degree, then it became the duty of the jury to weigh the probabilities in support of the contention of either party, and it cannot be maintained that the verdict thus reached is the product of misapprehension, prejudice, passion, or error. The three sales shown by the evidence of the daughter Jessie were flatly denied by the defendant. The sale on the morning of the 11th was vital to the result, and it will be observed that no witness is produced on either side in corroboration of the evidence of either respecting the sales relied upon by the plaintiff to support the action. The jury were required to determine where the truth lay as between the conflicting evidence of the daughter of the plaintiff and the defendant; and to determine that question they should, and we must assume did, look for corroboration in the surrounding circumstances and probabilities. The evidence of the brother Richard respecting a sale on Wednesday afternoon, though contradicted by the witness Wachter, as well as the circumstances related by the witness Sherman, was competent to be considered as corroborative of the evidence of Jessie respecting the sale of liquor to the deceased. Also the circumstances brought out by the evidence that the defendant kept an hotel, maintained a bar, and sold liquor, and that the deceased was a caller at the hotel several times daily, and both morning and evening during the period of his debauch, and was constantly in a state of intoxication, and that there was found upon his person, after the shooting, a bottle partly full of liquor, similar to the one the witness Jessie described as having been filled for him by the defendant on Thursday morning, were proper to be considered as tending to substantiate and make probable the evidence of the witness Jessie. They established an opportunity for the sales of liquor and the resulting intoxication from its use, and the similarity of the bottle found on the person of the deceased after the shooting with the one, identified by appearances, had by deceased in making the alleged purchase on the morning preceding the shooting, was and is proper to be considered, as connecting the defendant with such sale. The proof afforded by these circumstances, as well as the direct evidence of the other witnesses upon the subject of the sale of liquor by the defendant, tended to corroborate and make probable the reliability of the evidence of the witness Jessie.

The defendant, in support of his denial, proved by several witnesses that he refused to sell liquor to the deceased in their presence. This was competent evidence as an incidental circumstance tending to verify the truth of his denial, but it is not entitled to the conclusive inference that sales were not made by him upon other and distinct occasions. He also proved by several witnesses that the deceased stated that he (the defendant) would not sell him liquor. This statement, as given by the witness, was made during his drunken debauch, and its accuracy, for that reason, might be questioned. It does appear that upon certain occasions he had been refused liquor by the defendant, and it may be that his declaration was induced by such refusal. Time and circumstances are the essentials of this evidence, and were for the jury to consider. From this brief review of the evidence, and the probabilities arising therefrom, it is apparent that the jury, as before stated, were required, in disposing of the case, to adopt the evidence of either the witness Jessie or the defendant, as they are the only witnesses who speak upon the alleged sale on Thursday morning; and I assume, in reaching a verdict involving the adoption of the witness Jessie's evidence, the jury did so upon a full consideration of the force and weight of the circumstances and probabilities developed in the case, and with its result I am disinclined to interfere. The statements made by the witness Jessie upon and immediately after learning of the tragedy enacted by her father, and sworn to by four witnesses for the purpose of impeaching her credibility, were for consideration by the jury. The excitement, grief, and circumstances attendant upon and under which they were made control the weight to be accorded to them. Statements at variance with her evidence, made under the circumstances disclosed in this case, should not, as matter of law, be accorded absolute verity.

The third ground stated—that the liquor sold by the defendant to the deceased did not contribute to the intoxication complained of—has no support

in the evidence, and for that reason the verdict should not be set aside. The deceased, as the evidence shows, was, on the morning of the shooting, in a delirious state, produced by an excessive and prolonged use of intoxicating liquors; had partaken of no food for several days, and on the morning of the 11th drank one glass of liquor at the defendant's bar, and took away with him one-half pint in a bottle. After inflicting the injuries upon the plaintiff and himself on the following morning, a half pint bottle was found upon his person partly full. The fair and reasonable inference to be drawn from these facts supports and justifies the finding of the jury that the liquor thus obtained from the defendant contributed in some degree to the intoxication from which he was suffering constantly during 25 hours thereafter. It is not important that he received liquor elsewhere than at the defendant's as a means of continuing the debauch, as the requirement of the statute is met when proof is adduced that the liquor sold or given to him by this defendant contributed to the result. The intoxicated and delirious condition in which the deceased was on the morning of the 12th was the culminating effect of the liquor drank by him daily between the 5th of the month and the morning of the shooting, and the jury therefore had warrant for inferring that the liquor obtained by him on the morning of the 11th of the defendant played its part in producing the delirious intoxication consequent to his drunken debauch, and ending in an attempt at murder and suicide.

The reasons assigned in the fourth ground are also without merit. The evidence discloses that, prior to the occurrences made the subject of this action, the deceased had been on terms of friendship and husbandly relations with the plaintiff, and had furnished means of support for his family; and both motive and provocation are absent justifying an attempt upon the part of the deceased to deprive the plaintiff of her life. During his debauch it appears that he became morose, ugly, and quarrelsome, and on the morning in question he is described as vicious, ugly, and crazy drunk. On the evening preceding the injury to the plaintiff, fearing violence from the deceased, the plaintiff left their home, returning thereto in the morning, and remaining upon the promise of the deceased to refrain from intoxicating drink. Under these circumstances the jury were permitted to infer that the injury inflicted upon the person of the plaintiff and himself was impelled by the loss of moral responsibility resulting from intoxication. The evidence that the deceased had on former occasions drunk at the defendant's hotel, and had had protracted sprees, to the knowledge of the defendant, was competent as bearing on the question of damages. Wilber v. Dwyer, 69 Hun, 507, 23 N. Y. Supp. 395; Reid v. Terwilliger, 116 N. Y. 530, 22 N. E. 1091.

The motion for a new trial should be denied, with $10 costs.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

W. S. Thrasher, for appellant.
J. R. Jewell, for respondent.

PER CURIAM. Judgment and order affirmed, with costs, on the opinion of LAMBERT, J., delivered at trial term.

---

(23 Misc. Rep. 404.)

MILLER v. MILLER KNITTING CO. et al.

(Supreme Court, Trial Term, Columbia County. January, 1898.)

1. MORTGAGE—CONDITION—RIGHT OF ACTION.
　　A mortgage conditioned to stand as security for payment of all sums the mortgagee shall pay, or be liable to pay on account of indorsing, secures against liability; so that it is enough, to authorize action thereon, that the indorsed notes are due, and have been protested.

2. SAME—FORECLOSURE—DECREE.
　　Decree in action to foreclose mortgage given to indorser to secure against liability may cover notes which have matured, and on which the indorser's