Mrs. William Bistline, Appellant, v. Ney Brothers and Others, Appellees.

Intoxicating liquors: WRONGFUL SALE: DAMAGES: DEFENSES. Under the statute all sales of intoxicating liquor to a person in the habit of becoming intoxicated, 'or using intoxicants as a beverage, are made at the peril of the seller; and on the prosecution of any cause of action growing out of the wrongful act, the good faith of the seller, or his ignorance of the habits of the buyer, is immaterial.

Same: PROOF REQUIRED OF PLAINTIFF: INSTRUCTIONS. In an action for damages by the wife for the wrongful sale of intoxicating liquor to her husband, who committed suicide while intoxicated, it is only necessary to satisfy the statute for her to show that the act was committed while he was in fact intoxicated with liquor sold him by defendant; she cannot be required to assume the burden of showing that he would not have committed the act had defendant not sold him the liquor.

*Appeal from Clay District Court.*— HON. W. B. QUARTON,
Judge.

THURSDAY, APRIL 11, 1907.

ACTION to recover damages on account of alleged un-
lawful sales of intoxicating liquors to plaintiff's husband.
There was a judgment for the defendants, and the plaintiff
appeals.— *Reversed.*

*G. H. Martin.* and *F. H. Helsell,* for appellant.

*Healy Bros. & Kelleher,* for appellees.

WEAVER, C. J.— The defendants, Ney Bros., were
registered pharmacists, doing business at the town of Webb,
Iowa, during the year 1904, and held a permit for the law-
ful sale of intoxicating liquors. During the year named,
William Bistline, a young married man of twenty-seven
years of age, resided with his wife upon a farm about three
miles from Webb. The evidence shows quite clearly that
Bistline was in the habit of drinking intoxicating liquors
to excess and frequently became intoxicated, with the usual
result of more or less domestic unhappiness. On the even-
ing of October 29, 1904, Bistline, accompanied by one Mc-
Clay, his hired man, visited the town of Webb. He re-
turned home that night about half past ten o'clock con-
siderably intoxicated. His wife with her young child were
in bed. She gave expression to some words of complaint
or remonstrance to her husband He manifested consid-
erable excitement, and, as was his wont when in a maudlin
condition, shed tears. Leaving his wife he went upstairs
to McClay's room, where he procured a revolver, but McClay
followed and took the weapon from him. He was after-
wards heard to go out of the door, and was not seen again,
till morning revealed his dead body at the barn some three
hundred feet distant from the house. The appearances in-

dicated with considerable degree of certainty that as he went out through the kitchen he took a small rifle which he had left there, and with it had shot himself through the head, causing instant death.    The petition alleges that on frequent occasions during the said year of 1904 and prior to his suicide, defendants had unlawfully sold to said Bistline intoxicating liquors, thereby contributing to and causing his frequent intoxication, and that on his visit to Webb on the evening of his death, defendants again unlawfully sold him such liquors, thereby causing his intoxication, and that while so intoxicated, and because thereof, he took his own life. For the injury thus caused to her means of support plaintiff asks to recover damages.    Defendants admit they are registered pharmacists holding permit for the lawful sale of intoxicants, but deny having made any unlawful sales to Bistline, and deny having caused or contributed to his intoxication.    Numerous errors are assigned as grounds for the reversal of the judgment below, but we shall confine our review to those which seems to us decisive of the appeal.

I.    Much testimony was offered and admitted on behalf of the defendant, to the point that defendants had no knowledge of Bistline's habits of intoxication, and that such sales

1. INTOXICATING LIQUORS: wrongful sale: damages: defenses.

of liquor as were made to him were made in good faith.    It seems hardly necessary to say that under our statute every sale of intoxicating liquors to a person in the habit of becoming intoxicated or in the habit of using intoxicants as a beverage is made at at the peril of the seller; and that in any prosecution therefor or of any cause of action based on such wrongful act, the good faith of the seller and his ignorance of the habits of the buyer constitute no answer or defense.    He must " personally know " that the buyer is not addicted to such habit, or have written proof of such fact from some reputable third person.    Code, section 2394.    If he does not know he can refuse to sell, and if he sells without such knowledge, it is an election on his part to take the chances.

The court seems to have given the proper instructions to the jury upon this point; but the testimony was not withdrawn from consideration nor its effect limited in application to any particular proposition on which it might possibly have been admissible.

II.    Counsel for the plaintiff requested instructions to the jury, to the effect that it was not essential to her right of recovery that she prove the suicide of her husband was the natural or necessary consequence of his intoxication, but it was sufficient if the act was done by him while he was in fact intoxicated with liquor unlawfully sold him by the defendants. This request was refused, and at the request of the defendant, the court told the jury that before plaintiff could recover damages for injury to her means of support by the death of her husband, she must establish by a preponderance of the evidence that his intoxication was caused by liquors unlawfully sold him by the defendants, and that such intoxication " actually caused his death "; also that " if the evidence leaves it uncertain whether the state of mind of William Bistline which led to the purpose on his part to destroy his life resulted because of his intoxication " or from some other cause, plaintiff could not recover; also, that it was " indispensable " to such recovery that the jury should first find it to be " actually shown that the death of said Bistline was in fact caused or contributed to by his intoxication "; and that it must " not only appear that said Bistline did commit suicide; but that such suicide was caused by the intoxication."

*2. SAME: proof required of plaintiff: instructions.*

Following these propositions, the court gave the following instructions which we quote in full:

(26)    It does not follow that merely because a person injures himself, or is injured while in the state of intoxication, that such intoxication is the cause of such injury, or that any person causing or contributing to such intoxication is liable for the injury.

(27)   In order that the defendants, or any of them, may be held liable for any damages resulting to the plaintiff because of the death of William Bistline, it must be shown that the death was caused in a manner, and by means, which naturally resulted because of his intoxication so caused.   The motives which lead a human being to acts of violence against himself or others, in order that liability should be created against one who furnishes to such person intoxicating liquors, must be of such character as to be naturally aroused, produced, or set in motion by means, and because of intoxication resulting from the use of such liquors.   The mere fact, if it be a fact, that one who has used intoxicating liquors is guilty of acts of violence towards himself or others is not itself sufficient to show that such acts of violence were influenced or caused by the use of such intoxicating liquors.   As to whether it was so caused or not it is for you to say from the evidence.

(30)   It is not enough in order that you may find a verdict against the defendants or either of them that you find that they made sales of intoxicating liquors or furnished intoxicating liquors to the said Wm. Bistline, and that such sales produced intoxication; in any event, the plaintiff cannot be entitled to a verdict, unless you can find that it is proven by a preponderance of the evidence that if said sales had not been made or such intoxicating liquors furnished by the defendants, or some of them, that the death of said Wm. Bistline would not have resulted.

In our opinion, the instructions here quoted and the others of similar character to which we have made reference, do not correctly state the law.   The statute under which this action is brought (Code, section 2418) provides that " every wife, child, parent, guardian, employer, or other person who shall be injured in person or property or means of support *by any intoxicated person,* or *in consequence of* the intoxication, habitual or otherwise, of any person " shall have a right of action for the damages so sustained against any one who, by selling liquors in violation of law, causes the intoxication of such person.   The instruction given the jury, and the argument for appellee, seem to go upon the theory

that the statute bears no different construction than it would have if the words "by any intoxicated person" were eliminated therefrom, and that no right of action exists against the liquor seller for injuries inflicted by an intoxicated person whose condition has been produced by liquors unlawfully sold to him, unless it also be affirmatively shown that such injury is the immediate and proximate consequence of such intoxication. Indeed, they go much farther than this, and require the plaintiff to show, not only the fact of intoxication wrongfully produced by the acts of the defendant in selling liquor to her husband, and his suicide while in such intoxicated condition, but deny her the right of recovery until she has shown by a preponderance of the evidence he would not have taken his own life had not the defendants sold him the liquor which produced the intoxication. Moreover, this burden upon the plaintiff is increased — if that be possible — by requiring her to convince the jury that the death of the suicide was " caused in a manner, and by means which naturally resulted because of his intoxication so caused "; and that the " motives " which led him to turn his hand against his own life were " of such character as to be naturally aroused, produced or set in motion by means, and because of intoxication resulting from the use of such liquors." It requires but little reflection to see that the rule of these instructions casts upon the plaintiff the burden of accomplishing a moral impossibility as an indispensable condition of a right on her part to recover damages, and leaves the statute which attempts to create that right shorn of effective force and vitality.

It is to be remembered that this statute creates a new right of action, and, to sustain such action, the person injured is not required to establish all the elements of an injury actionable at common law. It is enough if the facts alleged and proven include all the elements which the statute upon reasonable and fair construction may be said to pre-

scribe. *Volens v. Owens,* 74 N. Y. 526 (30 Am. Rep. 337);
*Dunlavey v. Watson,* 38 Iowa, 398; *Rafferty v. Buckman,*
46 Iowa, 201; *Bertholf v. O'Reilly,* 74 N. Y. 509 (30 Am.
Rep. 323). The last-cited case considers a statute which
makes the owner of a saloon building liable for damages
occasioned by the act of his tenant in selling liquors to
one who becomes intoxicated thereon to the injury of his
family in their means of support. The right of recovery
there upheld presents scarcely a single feature of an action-
able wrong at common law. The leasing of his building to
a liquor seller was a lawful act; he did not authorize or have
knowledge of the sale by the tenant; the resulting injury to
the family of the purchaser was not the proximate or im-
mediate result of the lease, and yet the lessor's liability was
enforced simply because this liability, remote and indirect
though it be, had been by the statute attached to every per-
son who leased his property for use as a place for the sale,
whether lawful or unlawful, of intoxicating liquors. So also
in the case at bar. Our Legislature has seen fit to pro-
hibit the sale of intoxicants except to certain persons, and
for certain specified purposes, and to burden the lawful traf-
fic with certain restrictions and liabilities. No person is
compelled to engage in the traffic either lawfully or unlaw-
fully, and, if he does so, he is held to have assumed all the
responsibilities which the law has attached thereto. Among
these is the statute which specifically declares that any wife,
child, parent, guardian, or other person who shall be injured
in his or her means of support by any intoxicated person,
or in consequence of the intoxication of any person, shall
have a right of action for damages against the dealer who
wrongfully supplied the liquor which produces or contrib-
utes to produce such intoxication. The language is too
plain to require interpretation. The liability thus created
is to every person who is injured in person or in property
or in means of support " by any intoxicated person or in con-
sequence of the intoxication of any person." In other

words, if the injury is inflicted by one who is intoxicated, the statute charges a liability for damages upon him who wrongfully supplied such person with liquor producing the intoxication. If a plaintiff, in an action of this kind, is to be held to establish immediate and proximate relation between the defendant's wrong and her injury, the statute has created no new right, for it is a general rule, as old as the common law, that every person is liable in damages for injuries directly and proximately resulting to another from his tort. The very purpose of the statute is to extend such liability to include injuries which, under the common law, would be held too remote. It is a matter of common observation that the average man when in his sober senses is not violent; is capable of exercising reason and judgment, and is mindful of his duty to his family, and to his neighbors. On the other hand, it is equally well known that intoxicants tend to dethrone the reason; to cast off self-restraint; to inflame the passions; to induce deeds of violence; and is not infrequently the moving cause which ends in murder or suicide. So true is this that when we see or hear or read of such an exhibition of human frailty, and are told that the person guilty thereof was drunk, we readily accept the statement as an all-sufficient explanation. Doubtless it was with this truth in mind that the Legislature enacted the statute which assumes that an injury done by a person while his reason, judgment, and discretion are dethroned by drink is chargeable to his abnormal condition, and that liability for such injury may extend back and affect him who furnished the liquor which produced that condition.

Some of the difficulty which counsel for appellees profess to find with the application of the statute of the present case will disappear when we note that the liability which is here created is not for injuries resulting from the wrongful sale of liquors, but for injuries done by the intoxicated person to others, or resulting to others in consequence of such

intoxication. At common law, as we have already said, there was no such causal connection between the wrongful sale and subsequent act of the purchaser in drinking the liquor to intoxication, and thereby bringing consequential injury to his wife as would support an action by the latter; but the objection for remoteness has been removed by legislative enactment. *McClay v. Worrall,* 18 Neb. 44 (24 N. W. 433). This is not to say that a liquor seller may be held liable for injuries which are in no manner connected with the intoxication of the person in question. If, for instance, as counsel suggest, an intoxicated person is killed by a stroke of lightning or is shot by a highwayman or burglar, or meets with other misfortune having no reasonable or logical relation to his drunkenness no one would think of asserting a cause of action in favor of his dependents against the seller. Indeed the language of this statute clearly excludes all such absurd results. The liability is for injuries to others done *by* the intoxicated person, or resulting *from* his intoxication, and not for anything else. Statutes substantially like our own have been enacted in many other jurisdictions, and while there is some disharmony in the decisions, the great weight of authority is opposed to the theory on which this case was submitted in the court below, and argued here on behalf of the appellees. In Nebraska, under a statute which made the seller liable for all damages that any person might sustain " in consequence of such traffic," the court, answering the same contention which is here advanced by the appellees, says: " Such damages may be indirect and remote so long as they be traced to the traffic as the inspiring, aggravating, or assisting cause. It is not necessary that the damages be such a one as might be foreseen or anticipated by a reasonable person as a consequence of such traffic, or that it should naturally flow therefrom." This holding was reaffirmed in *Sellars v. Foster,* 27 Neb. 118 (42 N. W. 907).

In New York it has been held that where a husband

while intoxicated commits a crime for which he is imprisoned, the wife may recover damages from the liquor seller for her loss of support. The court there says the statute "itself establishes a rule of evidence applicable to and controlling all cases arising under its provisions, which in some respects is new, and has produced radical changes in the common-law rule. The statute makes no distinction whether the loss of the means of support is the direct or remote result of the intoxication." *Beers v. Walhizer,* 43 Hun (N. Y.) 254. To the same effect the Court of Appeals of that State has said the Legislature "may change the rule of common law, which looks only to the proximate cause of the mischief in attaching legal responsibility, and allow a recovery to be had against those whose acts contributed, although remotely, to produce it." *Bertholf v. O'Reilly,* 74 N. Y. 509 (30 Am. Rep. 323). The case of *Brockway v. Patterson,* 72 Mich. 122 (40 N. W. 192, 1 L. R. A. 708) is quite in point. The statute there construed differs in no essential respect from our own, and the court held it applicable to the following state of facts. Plaintiff's husband, Brockway, and another person became intoxicated upon beer purchased of the defendant, and on their way home quarreled and engaged in a fight in which Brockway received a blow, resulting in his death. His wife brought an action against the seller for damages, on the ground that she had been injured in her means of support "by an intoxicated person" within the meaning of the law. It was urged by counsel, as it is now urged by appellees in the present case, that the act of the defendant in selling the beer was not one which would ordinarily or naturally result in such a tragedy, and that the death of Brockway was not the direct, natural, or proximate result of the sale of the liquor. The court, overruling this objection, says: "The statute provides, as plain as the English language can state it, that this action shall lie for any injury occasioned by any intoxicated person. It is not for the injured party to pro-

duce proof or for the jury to speculate upon the proba-
bilities whether intoxication was the natural cause of the
act which caused the death." If loss of a husband's support
by a fatal blow delivered by another in a drunken condition
is an injury " by an intoxicated person " within the mean-
ing of the law, surely such an injury by the self-inflicted
blow of an intoxicated person will not be regarded an excep-
tion to the rule. In *Neu v. McKechnie,* 95 N. Y. 632 (47
Am. Rep. 89), the father of the infant plaintiff became
intoxicated, and in this condition killed his wife, and fol-
lowed the murder by suicide. Under a statute in the pre-
cise language of our own, an action was brought by the
infant against the liquor seller. Here also objection was
raised because of lack of proximate and causal relation
between the sale of the liquor by the defendant and the mur-
der and suicide committed by the purchaser, but the court
says it was sufficient for the plaintiff to show " the sale of
the liquors producing the intoxication, and the act of the
intoxicated person causing the injury to the plaintiff."
The opinion further says: " The jury were not to inquire
whether either the homicide or the suicide were the
natural, reasonable, or probable consequences of the
defendant's act. It is enough if, while intoxicated
in whole or in part by liquors sold by the defendant, those
acts were committed, if by reason of them, or either of them,
the plaintiff's means of support were affected to his in-
jury."

While cases may be found in which the ordinary rule
of proximate cause is spoken of as applicable to claims for
recovery of damages for injury done by an intoxicated person,
there is scarcely one in which a recovery has been sustained
that such rule is not ignored or treated as superseded by the
statute. For instance, where the owner of a building let
his property for saloon purposes, and the tenant sold liquor
to a third person who became intoxicated thereon, and in
such a condition abused and caused the death of a horse

owned by a fourth person, the latter was permitted to re-
cover damages from the landlord. *Bertholf v. O'Reilly,* 74
N. Y. 509 (30 Am. Rep. 323). See, also, *Dunlap v. Wag-
ner,* 85 Ind. 529 (44 Am. Rep. 42). Again, where the
intoxicated person undertook to drive home and fell in such
manner as to be beaten to death by the wheel of his own
wagon, the wife was held entitled to recover. *Mead v. Strat-
ton,* 87 N. Y. 493 (41 Am. Rep. 386). The seller has been
held liable for damages suffered by reason of an assault
committed by the intoxicated person. *English v. Beard,* 51
Ind. 489; *Mastad v. Swedish Brethren,* 83 Minn. 40 (85
N. W. 913, 53 L. R. A. 803, 85 Am. St. Rep. 446); *Pick-
ard v. Tearo,* 34 Ill. App. 398; *Doty v. Postal,* 87 Mich.
143 (49 N. W. 534); *McClay v. Worrall,* 18 Neb. 44 (24
N. W. 429). Injury to the wife's means of support by the
suicide of the husband while intoxicated affords a right of
action. *Lawson v. Eggleston,* 52 N. Y. Supp. 181 (28 App.
Div. 52, affirmed in 164 N. Y. 600, 59 N. E. 1124);
*Blatz v. Rohrbach,* 42 Hun (N. Y.) 402. This case was
reversed upon appeal, but not upon the point here referred
to. In Indiana, it is held that a wife may recover damages
for injury to her means of support occasioned by the im-
prisonment of her husband for a crime committed while
intoxicated upon liquors sold him by the defendant. *Ho-
mire v. Halfman,* 156 Ind. 470 (60 N. E. 154). She may
recover for an assault upon herself by her husband while in-
toxicated. *Wilson v. Booth,* 57 Mich. 249 (23 N. W. 799);
*Schlosser v. State,* 55 Ind. 82. So also where the injury is
occasioned by the reckless driving of a horse by an intoxi-
cated person. *Aldrich v. Sager,* 9 Hun (N. Y.) 538;
*Hackett v. Smelsey,* 77 Ill. 109; *Mulcahey v. Givens,* 17
N. E. 598 (115 Ind. 286). For other illustrative cases, see
*Boos v. Sliney,* 11 Ind. App. 257 (39 N. E. 197); *Stafford
v. Levinger,* 16 S. D. 118 (91 N. W. 462, 102 Am. St.
Rep. 686); *King v. Haley,* 86 Ill. 106 (29 Am. Rep. 14);
*Peterson v. Knoble,* 35 Wis. 80; *People v. Brumback,* 24

Ill. App. 501; *Smith v. People,* 141 Ill. 447 (31 N. E. 425); *Curran v. Percival,* 21 Neb. 434 (32 N. W. 213); *McCarty v. Wells,* 51 Hun (N. Y.) 171 (4 N. Y. Supp. 672); *Bacon v. Jacobs,* 63 Hun, 51 (17 N. Y. Supp. 323); *Bodge v. Hughes,* 53 N. H. 614; *Fortier v. Moore,* 67 N. H. 460 (36 Atl. 369); *Weick v. Lander,* 75 Ill. 93. Not all of these authorities state the rule as broadly as do the cases from Michigan and New York; but the logical tendency of all is in the same direction. As already noted, there are among them opinions which profess to apply the rule of proximate cause; but in each instance the term " proximate," is used in the sense of an originating cause, from which the injurious effect is logically traced through an intervening series of acts or events. This rule is, of course, properly applicable where the right of recovery is based upon the second clause of the civil damage statute which makes the liquor dealer liable for injury sustained " in consequence " of the intoxication of any person. But where recovery is sought under the first clause for injury done " by an intoxicated person," the adjudicated cases are practically unanimous that when the plaintiff has proved the unlawful sale to a person on whom she is dependent for support, and the intoxication of such person thereby produced and an injury done by him while in that condition to her means of support, she has made the case for which the statute provides. In other words, the statute indulges in the reasonable presumption that an act done to the injury of his family by a person whose faculties are abnormally excited, or confused by drink, especially where the act is of a character not ordinarily to be expected from a sane and sober person, is the result of his intoxication. If when these have been shown the defendant claims that notwithstanding the drunkenness so wrongfully occasioned, the injurious act is wholly chargeable to some other cause or influence, it is open to him to establish that fact in defense. It is certainly not required of the plaintiff, that, after proving the wrong-

ful sale of the liquor by defendants to her husband, his resultant intoxication, and his suicide while in that condition (and upon each of these points there was evidence on which the jury could properly find in her favor), she must then proceed to prove by a preponderance of the evidence that the deceased would *not* have committed suicide had the defendants not sold him the liquor. We find no precedent or authority imposing that burden upon her, and we can conceive of no good reason for establishing such a rule.

Numerous other questions are pressed upon our attention in argument, but we have said enough to indicate the necessity of ordering a new trial, and other points, which we do not discuss, are not likely to arise on another hearing.

For the reasons stated, the judgment of the District Court is *reversed*.