544 So.2d 900 (1989)
Cecil LAYMON and Linda J. Laymon
v.
Kenneth BRADDOCK, et al.
88-230.
Supreme Court of Alabama.
March 10, 1989.
Rehearing Denied May 5, 1989.
*901 Barry N. McCrary, Talladega, and Donald W. Stewart, Anniston, for appellants.
George A. Monk of Merrill, Porch, Doster & Dillon, Anniston, for appellees.
PER CURIAM.
This is an action brought by Cecil Laymon and Linda J. Laymon, individually, and as parents of Lesia Gayle Laymon, their deceased minor daughter, against Kenneth Braddock; James A. Carson, d/b/a Carson Spur Station; and Michele Jones,[1] for the wrongful death of Lesia.
Lesia was killed when the automobile she was driving ran off the road and turned over. Lesia was 16 and was not a licensed driver but had her learner's permit. Lesia's former sister-in-law, defendant Michele Jones, who drove the automobile for most of the night of the accident, was in the automobile as a passenger at the time of the accident. Ms. Jones testified that she had purchased a carton containing four bottles of "wine cooler" from Braddock, who was a clerk at the Carson Spur Station, on three different occasions on the night of the accident; that during the first two purchases, Lesia remained in the automobile; that during the third purchase, both Lesia and Ms. Jones went into the Spur Station; that at that time, they were giggling, and that Lesia asked if her eyes were red, if bubble gum would take the alcohol smell off her breath, and made the statement: "I can't go home like this. Mama will slap my face." There was testimony that this statement was made in the presence of Braddock, and that he responded to Lesia's statement by laughing. Braddock and his wife, who was present at the Spur Station, denied that Ms. Jones had purchased any wine coolers from the Spur Station on the night of the accident. Evidence was presented that on the night of the accident Lesia had attended a social function at which alcoholic beverages were served; that Ms. Jones drove most of the night, but that Ms. Jones became emotional and Lesia then drove. After the accident, tests showed that Lesia had a .03% blood alcohol content and that Ms. Jones had a .155% blood alcohol content.
*902 The Laymons' complaint charged Ms. Jones, Braddock, and Carson with negligence, wantonness, and violations of Ala. Code 1975, §§ 6-5-70 and 6-5-71. At the close of all the evidence, the trial court directed a verdict in favor of Braddock and Carson on the common law counts of negligence and wantonness and on the claim under § 6-5-70. Thereafter, the Laymons voluntarily dismissed their common law counts and claim under § 6-5-70 against Ms. Jones. The Laymons' claim under § 6-5-71 was submitted to a jury.
The jury verdict was as follows:
"We, the jury, find in favor of all the defendants, Kenneth Braddock, James A. Carson, and Michele Jones, and against the plaintiffs, Cecil and Linda J. Laymon."
The Laymons' motion for a new trial was denied.
One of the two issues presented for review is whether the trial court erroneously charged the jury regarding the requisite standard of causation under Ala.Code 1975, § 6-5-71. This issue does not involve the failure to give a written requested instruction; it involves only the trial court's oral charge.
In McElmurry v. Uniroyal, Inc., 531 So.2d 859, 859-60, (Ala.1988), this Court held:
"To be timely, an objection to the trial court's oral charge must be made at the close of the court's initial instructions to the jury, and it must be stated with sufficient clarity or specificity to preserve the errorin other words, an exception designating only the subject treated by the court in its oral charge is insufficient. See Rule 51, A.R.Civ.P.; Harper v. GFA Transp. Co., 432 So.2d 1234 (Ala.1983). Although Rule 51 does not contemplate that the objecting party, in order to preserve for appellate review an erroneous instruction, deliver a discourse on the applicable law of the case, he must adequately state specific grounds for his objection.

"... Rule 51, A.R.Civ.P., expressly requires that a party state the grounds for his objection; the failure to do so prevents appellate review of the alleged error." (Citations omitted.) (Emphasis supplied.)
In the case at issue, the Laymons made the following objections, and these are the only objections that pertain in any way to this issue for review:
Attorney for the Laymons: "The others, basically, have to do with a series of charges that commenced by saying that the defendants Braddock and Carson assert athat it was not as a consequence of, but there was an independent, intervening act or something like that. And then later, much later in the charge the Court was actually charging on that.
"In the case that's been cited, with approval by the Alabama Court, it specifically says that even a remote cause, but one that is in consequence of, is sufficient. I don't have my notes, but I think all would fall within that category, if the Court understands what I'm objecting to. Court: "All right."
Attorney for the Laymons: "Let me make it clear when I mentioned the word `remote' a moment ago, and just before that `intervening,' I'm talking about all the charges, some of which were apparently prepared by the defendant and incorporated, having to do with remote, independent, intervening, and all those words that are more properly, in plaintiffs' contention, we believe happened in proximate causation.
"Which has been replaced by the statute, and the language of the statute, and the language of the court in the Derrick case.
Court: "All right. Those exceptions are noted."
In support of their contention that the oral charge was erroneous, the Laymons cite Bistline v. Ney Bros., 134 Iowa 172, 111 N.W. 422 (1907); McClay v. Worrell, 18 Neb. 44, 24 N.W. 429 (1885); Wilcox v. Conti, 174 Misc. 230, 20 N.Y.S.2d 106 (Sup. Ct.1940); Cross v. Ryan, 124 F.2d 883 (7th Cir.1941), cert. denied, 316 U.S. 682, 62 *903 S.Ct. 1269, 86 L.Ed. 1755 (1942); Weisguth v. Stack, 165 Ill.App. 462 (1911). They also cite Phillips v. Derrick, 36 Ala.App. 244, 246, 54 So.2d 320, 321 (1951), which refers to Bistline v. Ney Bros., supra, in support of the following:
"The above section evidences a policy on the part of the law-making body to discourage the illegal sale of alcoholic beverages. Further, by the very terms of the enactment the person injured by the illegal sale of alcoholic beverages is not held to the usual standards of proof of causal connection between the illegal sale of the beverages and the injury." (Emphasis supplied.)
In the case at issue, the trial court charged:
"[B]efore there could be a verdict in favor of [the Laymons] and against [Braddock and Carson], the damages complained of must again be in consequence of the intoxication of the person....
"....
"Now, this term `in consequence of the intoxication of a person' is not a phrase that is used often in the law. ... [N]ormally, liability will be imposed only when the wrong is the proximate cause of an injury.
"That's not the terminology or the language that we have in this statute. Our statute says there shall be a right of action for the particular persons when in consequence of the intoxication of any person one is wrongfully or contrary to law so disposed or given alcoholic beverages, and caused the intoxication of such person to the damage of the persons who can sue." (Emphasis supplied.)
The trial court further instructed the jury that:
"[A] person selling alcoholic beverages is not responsible for all remote or possible consequences which may result from such a sale. And before there could be a verdict in favor of the plaintiffs and against the defendant, the damages complained of must again be in consequence of the intoxication of the person...." (Emphasis supplied.)
We believe that the trial court's charge sufficiently complied with the following proposition of law in Phillips v. Derrick, supra:
"[T]he person injured by the illegal sale of alcoholic beverages is not held to the usual standards of proof of causal connection between the illegal sale of the beverages and the injury."
Likewise, we believe that the trial court instructed that a person selling alcoholic beverages could be responsible for remote or possible consequences, if the damages complained of were "in consequence of" the intoxication of the person.
The Laymons did not adequately state any other specific grounds for their objection to the trial court's oral charge, and we cannot review further this alleged error. Rule 51, A.R.Civ.P.; McElmurry v. Uniroyal, Inc., supra.
The other issue presented for review was whether the trial court erred in granting Braddock and Carson's motion for directed verdict on the Laymons' claim under Ala. Code 1975, § 6-5-70, which provides in pertinent part:
"Either parent of a minor ... shall have a right of action against any person who unlawfully sells or furnishes spirituous liquors to such minor ... provided the person selling or furnishing liquor to the minor had knowledge of or was chargeable with notice or knowledge of such minority." (Emphasis supplied.)
If there is a purchase of spirituous liquors, the seller has a duty to ascertain that the purchaser is not a minor. There is not a scintilla of evidence that Braddock or Carson sold the wine coolers to Lesia. Wade v. State, 170 Ala. 32, 54 So. 171 (1911), and Liles v. State, 88 Ala. 139, 7 So. 196 (1890), involved a second-party sale subterfuge that was known to, and in Liles participated in by, the seller of spirituous liquor. Those cases are distinguishable from the case at issue. What constitutes "furnishing" spirituous liquors to a minor? Ms. Jones did not purchase the wine coolers and hand one to the minor for her to drink in the presence of the seller, as happened in Page v. State, 84 *904 Ala. 446, 4 So. 697 (1888), and in Salvia's Bar, Inc. v. Pennsylvania Liquor Control Board, 211 Pa.Super. 275, 236 A.2d 839 (1967). There was evidence that Ms. Jones had previously purchased eight wine coolers from Carson Spur Station on the night of the accident, while Lesia remained in the automobile. There was no evidence that would impose liability on Braddock or Carson under § 6-5-70 for either of these purchases. Ms. Jones testified that she shared these eight wine coolers with Lesia. Ms. Jones testified that the following took place when she purchased wine coolers the third time: Lesia and Ms. Jones both went into the Spur Station; in the presence of Braddock, they were giggling; Lesia asked Ms. Jones if Lesia's eyes were red and if bubble gum would take the alcohol smell off of her breath; Lesia said, "I can't go home like this. Mama will slap my face"; and Braddock laughed in response to Lesia's comment. We interpret the words "furnishes" and "furnishing" in § 6-5-70 to extend liability under § 6-5-70 to a seller or furnisher of spirituous liquors, who, from the totality of the circumstances, must reasonably infer that the person to whom the spirituous liquor is sold or furnished will permit a minor to consume some of this spirituous liquor. Page v. State, 84 Ala. 446, 448, 4 So. 697, 698 (1888), contains the following statement:
"The defendant requested the court to charge the jury, that `unless the defendant knew at the time he sold the liquor, or received the money, that the minor was going to drink, the jury should find the defendant not guilty.' This laid down too exacting a standard. Dave Driver and his nephew approached the counter together; the uncle called for drinks and paid for them; the defendant understood the number of drinks wanted, for he set before them a bottle and two glasses, and the two drank together. Now, although defendant could not know as fact that the uncle intended one of the drinks for his nephew, his conduct showed that he understood such was the intention. Men act in the gravest matters on appearances no stronger than were shown in this case. Even jurors who impose the heaviest penalties known to the criminal code, do not know the defendant is guilty. They act on convictionnot knowledge. Although Page did not know one of the drinks was intended for the minor, the circumstances were such as reasonably to convince him of what was intended." (Emphasis added in Page.)
Page was a criminal case; this is a civil case tried under the "scintilla of evidence" rule. Clearly, if there had been evidence that Braddock sold spirituous liquor to Ms. Jones and that Ms. Jones shared it with Lesia, it would have been error for the trial court to direct a verdict for Braddock and Carson on the § 6-5-70 count. However, there is no evidence, or reasonable inference that can be drawn from the evidence, to indicate that Lesia consumed any of the wine coolers purchased during this third visit to the Spur Station. Such evidence is essential to establish liability of a seller or furnisher under § 6-5-70.
In accordance with our standard of review, we will affirm a judgment based on a directed verdict when there is a complete absence of proof of one or more elements of the non-movants' cause of action, or when there are no disputed questions of fact on which reasonable people can differ. Kizziah v. Golden Rule Insurance Co., 536 So.2d 943 (Ala.1988); Armstrong v. Life Insurance Co. of Virginia, 454 So.2d 1377 (Ala.1984).
The trial court did not err in directing the verdict for Braddock and Carson on the Laymons' § 6-5-70 claim.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
JONES, HOUSTON and STEAGALL, JJ., concur specially.
HOUSTON, Justice (concurring specially).
I concur with the per curiam opinion; however, I would extend the opinion. Therefore, I concur specially.
*905 There was no evidence that the "California wine coolers" that were allegedly purchased from the Carson Spur Station were "spirituous liquors." There is nothing in the record to show that a wine cooler is a "spirituous liquor," as this term was defined by this Court when Alabama Code 1975, § 6-5-70, was enacted; or as it is defined generally; or as it is defined in Ala.Code 1975, Chapter 3, Title 28, "Regulation and Control of Alcoholic Beverages in Wet Counties." This Court in Tinker v. State, 90 Ala. 647, 648, 8 So. 855 (1891), defined "spirituous liquor" as "that which, in whole or in part, is composed of alcohol extracted by distillation," citing Allred v. State, 89 Ala. 112, 8 So. 56 (1890), and Bishop on Statutory Crimes, § 1009. The American Heritage Dictionary of the English Language (1969) and the American Heritage Dictionary (2d college ed. 1985) define "spirituous" as "[h]aving the nature of or containing alcohol; alcoholic"; and "liquor" as "[a]n alcoholic beverage made by distillation rather than by fermentation." Webster's Third New International Dictionary (1976) defines "spirituous" as "containing or of the nature of spirit: impregnated with alcohol obtained by distillation;" and it defines "liquor" as: "something drunk as a beverage (as water, milk, fruit juice); esp: a usually strong distilled alcoholic beverage (as whiskey, rum) rather than a fermented one (as wine, beer)." The Random House Dictionary of the English Language (1973) defines "spirituous" as "containing, of the nature of, or pertaining to alcohol; alcoholic[;] (of alcoholic beverages) distilled, rather than fermented"; and it defines "liquor" as "a distilled or spirituous beverage, as brandy or whiskey, as distinguished from a fermented beverage, as wine or beer." Black's Law Dictionary (5th ed. 1979) defines "liquor" as an "[a]lcoholic beverage made by distillation; to be contrasted with wines which are made by fermentation."
In Ala.Code 1975, § 28-3-1, the following definitions appear:
"(15) LIQUOR. Any alcoholic, spirituous, vinous, fermented, or other alcoholic beverage, or combination of liquors and mixed liquor, a part of which is spirituous, fermented, vinous or otherwise alcoholic, and all drinks or drinkable liquids, preparations or mixtures intended for beverage purposes, which contain one-half of one percent or more of alcohol by volume, except beer and table wine.

"....
"(33) TABLE WINE. Any wine containing not more than 14 percent alcohol by volume. Table wine is not liquor, spirituous or vinous." (Emphasis supplied.)
Ala.Code 1975, § 6-5-70, only authorizes a right of action against a "person who unlawfully sells or furnishes spirituous liquors to" a minor. It appears that under the general definition of "spirituous liquor," wine, a fermented beverage, would not be included. Likewise, for the control of alcoholic beverages in Alabama "spirituous" liquor is considered something different from "vinous" liquor, for "vinous" is in a set of alternatives with "spirituous" in the definitions of "LIQUOR" and "TABLE WINE"; and any wine containing not more than 14 percent alcohol is not "liquor, spirituous or vinous." This is consistent with the general definition of wine in the American Heritage Dictionary of the English Language, which defines "wine" as "[t]he fermented juice of any of various kinds of grapes, usually containing from 10 to 15 percent alcohol by volume," and with this Court's definition in Tinker v. State, supra: "Vinous liquor is liquor made from the juice of the grape.... Spirituous liquor, vinous liquor, and malt liquor are not synonymous terms, but each refers to a liquor separate and distinct from the others." 90 Ala. at 648, 8 So. at 856.
It is not for us to surmise why, at the beginning of this century, the Legislature, in what is now § 6-5-70, restricted the right of action to an action against one "who unlawfully sells or furnishes spirituous liquors to [a] minor" (which language, according to the definitions of spirituous liquors, would not include wine or beer), and permits, in § 6-5-71, a right of action against one who unlawfully sells, gives, or otherwise disposes of any liquors or beverages that cause intoxication. The Legislature *906 did so, and it is for us to interpret, not to rewrite, such legislation; but it is for us to bring this to the attention of the present Legislature for its evaluation, since, to the judicial mind, it would seem that wine and beer should be included in § 6-5-70.
JONES and STEAGALL, JJ., concur.
NOTES
[1] There were other defendants, who were dismissed, who are not parties to this appeal.