I concur as to the holding in regard to the claim based on § 6-5-71, Ala. Code 1975.
I dissent as to the holding regarding the § 6-5-70 claim, for most of the reasons stated in the majority opinion.
The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself. However, if the statute is ambiguous or uncertain, the Court may consider conditions that might arise under the provisions of the statute and examine the results that would flow from giving the language in question one particular meaning rather than another. John Deere Co. v. Gamble,523 So.2d 95, 96-97 (Ala. 1988), quoting from Clark v.Houston County Com'n, 507 So.2d 902, 903-04 (Ala. 1987).
The term "[s]pirituous liquor" is not ambiguous. It was being used around the time the statutory predecessor of § 6-5-70
was enacted by the legislature to mean that alcoholic drink that in whole or in part was composed of alcohol extracted by distillation. "[S]pirituous liquor" had been defined in that manner by this Court prior to the enactment of the predecessor to § 6-5-70. Tinker v. State, 90 Ala. 647, 648,8 So. 855 (1891). Neither beer nor wine was "spirituous liquor,"Laymon v. Braddock, 544 So.2d 900, 905 (Ala. 1989). To say that the legislature had a momentary lapse of memory on one day in 1907 is *Page 1234 
nothing short of violating the separation of powers mandate (Alabama Constitution 1901, § 43) and § 6.11 of Amendment No. 328 of the Constitution, which appears to limit the power of this Court to "abridge, enlarge or modify the substantive rights of any party."
In 1907, adopting the statutory predecessor to § 6-5-70, the legislature used the term "spirituous liquors." In 1909, adopting the statutory predecessor to § 6-5-71, the legislature used the phrase "any liquors or beverages, [that] cause the intoxication of such person."
In my special concurrence in Laymon v. Braddock,544 So.2d at 904-06, I wrote the following:
 "It is not for us to surmise why, at the beginning of this century, the Legislature, in what is now § 6-5-70, restricted the right of action to an action against one 'who unlawfully sells or furnishes spirituous liquors to [a] minor' (which language, according to the definitions of spirituous liquors, would not include wine or beer), and permits, in § 6-5-71, a right of action against one who unlawfully sells, gives, or otherwise disposes of any liquors or beverages that cause intoxication. The Legislature did so, and it is for us to interpret, not to rewrite, such legislation; but it is for us to bring this to the attention of the present Legislature for its evaluation, since, to the judicial mind, it would seem that wine and beer should be included in § 6-5-70."
(Emphasis in original.)
I was fully aware of the history surrounding the early 20th Century Prohibition acts when I wrote my special concurrence inLaymon v. Braddock, supra. See Martin v.Watts, 513 So.2d 958 (Ala. 1987) (Houston, J., dissenting,513 So.2d at 981-87), in which this history is discussed in great detail.
When I wrote my special concurrence in Laymon v.Braddock, I thought "that wine and beer should be included in § 6-5-70." I still do. However, interpreting the words of § 6-5-70, I cannot hold that they are, unless I do what Alabama Constitution 1901, Article III, § 43, prohibits me from doing (exercising legislative power). I took an oath to uphold the Constitution, including § 43. Thanks to the majority opinion "wine and beer," are included in § 6-5-70. To legitimize this action, I implore the legislature to replace the term "spirituous liquors" in § 6-5-70, with the phrase used in § 6-5-71: "any liquors or beverages [that] cause the intoxication of such person." The majority opinion suggests that I took "an unduly narrow approach" in defining words in my special concurrence in Laymon v. Braddock, supra, in using the definitions found in five different dictionaries. In my opinion, the majority opinion interprets "spirituous liquors" in the same manner as the hubristic eggshell in the following literary classic:
"There's glory for you!"
 "I don't know what you mean by 'glory,' " Alice said.
 ". . . I meant, 'there's a nice knockdown argument for you!' "
 "But 'glory' doesn't mean 'a nice knock-down argument,' " Alice objected.
 "When I use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean — neither more nor less."
Lewis Carroll, Through the Looking Glass, ch. VI (Nelson Doubleday, Garden City, N.Y.).