Karen K. KELLY, Conservator of the Estate of Regina Butcher, a Minor, and Karen K. Kelly, Individually; David Den Adel and Laverna Den Adel, Administrators of the Estate of Dena Marie Den Adel, and David Den Adel and Laverna Den Adel, Individually, Appellants,

v.

SINCLAIR OIL CORPORATION, d/b/a Sinclair Marketing Company, Appellee,

and

Boot Hill Enterprises, Inc., d/b/a Outer Limits and Dan Goulden, Appellees,

and

Scott Giannetto and Jeffrey Dean Bryant, Defendants.

No. 90–1079.

Supreme Court of Iowa.

Oct. 16, 1991.

Rehearing Denied Nov. 26, 1991.

Robert A. Nading II and Gregory A. Skinner, Ankeny, for appellants Kelly.

Roger J. Hudson and Thomas T. Tarbox of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellants Den Adel.

Roland D. Peddicord and Joseph M. Barron of Peddicord, Wharton, Thune, Foxhoven & Spencer, P.C., Des Moines, for appellee Sinclair Oil.

Gerry Rinden and Andrew M. Johnson of Wintroub, Rinden, Okun & Sens, Des Moines, for appellees Boot Hill and Goulden.

McGIVERIN, Chief Justice.

This case involves several questions concerning the Iowa Dramshop Act and common law claims arising from the alleged furnishing of intoxicants. Plaintiffs allegedly were injured as a result of the acts of an intoxicated driver and other defendants.

Plaintiffs Karen K. Kelly, conservator of the estate of her daughter Regina Butcher, and Karen individually (Kelly), and plaintiffs David and Laverna Den Adel, administrators of the estate of their daughter Dena Marie Den Adel, and David and Laverna individually (Den Adel) (herein collectively referred to as plaintiffs), have taken an interlocutory appeal challenging the district court ruling granting certain defendants' summary judgment motions. Defendant Sinclair Oil Corporation (Sinclair) likewise has taken an interlocutory appeal challenging the district court ruling denying one of Sinclair's summary judgment motions. We granted all parties' applications. *See* Iowa R.App.P. 2.

Plaintiffs contend that the district court erred in granting defendant Sinclair's summary judgment motion as to the counts of plaintiffs' petitions under the Iowa Dramshop Act. *See* Iowa Code § 123.92 (1989). Sinclair cross-appeals, claiming the court erred in failing to grant its summary judgment motion concerning plaintiffs' common law negligence counts against Sinclair.

Plaintiffs also contend the district court erred in granting the summary judgment motion of defendants Boot Hill Enterprises, Inc., and Dan Goulden concerning plaintiffs' dramshop actions, and also contend the court erred in granting the summary judgment motion of Boot Hill and Goulden concerning plaintiffs' common law negligence actions.

We, now, affirm the district court's ruling granting Sinclair's summary judgment motion on plaintiffs' dramshop counts. We also affirm the ruling granting Boot Hill and Goulden's summary judgment motion on plaintiffs' dramshop counts, as well as the ruling granting Boot Hill and Goulden's summary judgment motion on plaintiffs' common law negligence counts. However, we reverse the district court's ruling denying Sinclair's summary judgment motion on plaintiff's common law negligence counts.

I. *Background facts and proceedings.* Our examination of the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveals the following facts and proceedings. *See* Iowa R.Civ.P. 237(c). On the evening of January 28, 1989, defendant Jeffrey Dean Bryant, who was then twenty years old, went to the home of his friend defendant Scott Giannetto in Marshalltown, Iowa. They left Marshalltown in Giannetto's pickup truck to visit a friend, Dennis Carroll, who lived in Des Moines.

On the way to Des Moines, the two enjoyed a six-pack of beer and mixed drinks containing rum. When the two finally arrived at Carroll's house, both Carroll and his wife noticed the effects of Giannetto's imbibing. Despite Giannetto's obvious intoxication, Carroll decided to join him and Bryant on a late-night excursion through Des Moines.

At some point during their trip, Carroll suggested going to a bar. The three ultimately decided on going to the Outer Limits, a tavern owned by defendant Boot Hill. Before they went to Boot Hill's tavern, however, they stopped at a gas station and convenience store owned by defendant Sinclair. Bryant waited in the truck as Giannetto and Carroll went into Sinclair's store to purchase two six-packs of beer. Giannetto and Carroll consumed some of this beer as the group resumed its journey to the Outer Limits tavern; it is unclear whether Bryant also consumed some of this beer.

Upon their arrival at Outer Limits and immediately after passing through the tavern's front door, Giannetto, Carroll, and Bryant were confronted by defendant Dan Goulden, a bartender. Goulden demanded to see identification from each of the three men. Giannetto and Carroll produced their identification satisfying Goulden that they were old enough to be served alcohol. When Bryant admitted that he had no identification, however, Goulden promptly ordered him out of the tavern. Giannetto then gave his keys to Bryant, telling him to

sit and wait in his truck while he and Carroll drank the beers they had ordered. Bryant promptly left the tavern.

Some time later, Goulden received a report from another patron that there was a person in the Outer Limits parking lot spinning the wheels of his vehicle and throwing gravel all over the other cars. Goulden went out into the parking lot to find Bryant in Giannetto's pickup truck re-entering the parking lot from the highway. Bryant entered the lot at a high rate of speed and almost struck Goulden. After Bryant stopped the truck, Goulden ordered Bryant, through the truck's open window, to leave the premises. A short argument ensued, whereupon Goulden threatened to call the police if Bryant did not leave. During the argument, Goulden noticed that cans were lying on the floorboard of the truck, that the front of Bryant's shirt was wet, and that there was the smell of beer in the air. After Goulden made his threat, Bryant left the parking lot.

At roughly the same time Bryant left the parking lot, Dena Marie Den Adel, who was sixteen years old, was driving north on Highway 69. Regina Butcher, who was also sixteen years old, was a passenger in the Den Adel vehicle. Soon after Bryant left the Outer Limits parking lot, he drove through a stop sign and collided with the Den Adel vehicle. Den Adel was fatally injured in the crash. Butcher sustained severe head injuries.

Plaintiff Kelly, Butcher's mother, subsequently filed a petition at law naming as defendants Sinclair, Boot Hill, Goulden, Giannetto, and Bryant. Plaintiffs Den Adel filed a similar petition. The actions were consolidated. Only plaintiffs and defendants Sinclair, Boot Hill, and Goulden are involved in the present appeal.

Plaintiffs' petitions contain twelve counts, eight of which are relevant to this appeal. Counts I and II allege common law claims and contend that Sinclair was negligent in selling alcohol to Giannetto, which negligence is alleged to have been a proximate cause of plaintiffs' injuries. Counts III and IV further contend that Sinclair is liable for plaintiffs' injuries under Iowa's Dramshop Act. See Iowa Code § 123.92. Counts V and VI contend that Boot Hill likewise is liable under the dramshop act, and counts VII and VIII allege common law claims and contend that Boot Hill and Goulden were negligent in ordering the allegedly intoxicated Bryant out of the Outer Limits parking lot and onto the public roadway where he caused plaintiffs' injuries.

All defendants involved in this appeal moved for summary judgment. The district court overruled Sinclair's summary judgment motion concerning plaintiffs' negligence actions (counts I and II), but sustained the motions on the dramshop actions against both Sinclair and Boot Hill (counts III through VI), as well as on the negligence actions against Boot Hill and Goulden (counts VII and VIII). Plaintiffs appeal from the district court's ruling granting these summary judgment motions, and Sinclair cross-appeals the ruling denying its summary judgment motion as to plaintiffs' negligence action.

These appeals present five issues for our review: 1) whether stores such as Sinclair's convenience store which sell alcohol exclusively for off-premises consumption are excluded from liability under the Iowa Dramshop Act; 2) if the dramshop act is construed to exclude from liability stores which sell alcohol exclusively for off-premises consumption, whether this distinction violates the equal protection clauses of the United States and Iowa constitutions; 3) assuming plaintiffs may maintain a common law claim against Sinclair, whether Sinclair's conduct in selling alcohol to Giannetto was a proximate cause of plaintiffs' injuries; 4) whether Boot Hill's conduct in serving Giannetto alcohol was a proximate cause of plaintiffs' injuries; and 5) whether as a matter of law Goulden breached any legally recognized duty when he ordered an intoxicated Bryant out of the Outer Limits parking lot and onto the public roadway.

We consider each of these issues in turn.

II. *Liability of non-taverns under the dramshop act.* On this appeal, plaintiffs contend that the Iowa Dramshop Act, Iowa Code section 123.92, should be construed to

apply to non-taverns, such as Sinclair's convenience store and other grocery stores, that only "sell" alcohol, even though such stores do not also "serve" alcohol for on-premises consumption. The district court disagreed, holding that this court's decision in *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457 (Iowa 1989), compels the conclusion that establishments that do not sell *and* serve alcohol for on-premises consumption are not covered by the dramshop act. For this and other reasons, we conclude that establishments that do not sell and serve alcohol for on-premises consumption are excluded from liability under Iowa's Dramshop Act. More specifically, we hold that the 1986 amendments to the dramshop act, as construed in *Thorp*, preclude claims against convenience stores such as Sinclair's gas station.

Before the 1986 amendment to the dramshop act, Iowa Code section 123.92 read, in part, as follows:

> Every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly, against any licensee or permittee, who shall *sell or give* any beer or intoxicating liquor to any such person while the person is intoxicated, or serve any such person to a point where such person is intoxicated. . . .

Iowa Code § 123.92 (1985) (emphasis supplied).

The dramshop act was amended in 1986 to provide, in part, as follows:

> Any person who is injured in person or property or means of support by an intoxicated person or resulting from the intoxication of a person, has a right of action for all damages actually sustained, severally or jointly, against any licensee or permittee, who *sold and served* any beer, wine, or intoxicating liquor to the intoxicated person when the licensee or permittee knew or should have known the person was intoxicated. . . .

1986 Iowa Acts ch. 1211, § 12 (codified at Iowa Code § 123.92 (1987)) (emphasis supplied).

We believe that the addition of the word "served," which was not present in the pre–1986 act, and the change in the conjunction from "or" to "and," evidences a legislative intent to exclude licensees and permittees, who do not provide alcohol to customers for on-premises consumption, from dramshop liability. Stated another way, the word "serve," within the context of Iowa's Dramshop Act, means to "serve for on-premises consumption."

A. *Controlling basis for the holding in Thorp.* In *Thorp*, we considered whether the retroactive application of the 1986 amendment to section 123.92 constituted a deprivation of the plaintiff's rights in violation of state and federal constitutional due process provisions. 446 N.W.2d at 459. We noted that before the amendment, a plaintiff only had to show that alcohol was "sold." *Id.* However, after the amendment, a plaintiff no longer had a claim against a convenience store because the amendment precluded a plaintiff from making a dramshop claim against establishments that only "sell" beer. *Id.* at 462. We thus held that because the plaintiff's dramshop action was eliminated by the retroactive application of the 1986 amendment, plaintiff's due process rights had been violated. *Id.* at 463.

Plaintiffs Kelly and Den Adel argue that *Thorp* does not control the court's decision in this case because the construction of the "sold and served" language technically was not a contested issue in *Thorp*. This is because the *Thorp* plaintiff accepted the proposition that the amendment precluded her from making a dramshop claim against a convenience store that merely "sold" beer. *Id.* at 459.

Notwithstanding the precise nature of *Thorp*'s holding, we believe that the construction of the "sold and served" language was nevertheless a controlling basis for the decision made in *Thorp*, a basis which in turn controls our decision in this case. Had the amendment not operated to exclude from liability establishments which

merely "sold" alcohol, the *Thorp* plaintiff would have had a cause of action under the dramshop act. The plaintiff therein in turn would have been unable to argue that the amendment eliminated that cause of action in violation of due process. Thus, our construction of the "sold and served" language was, contrary to plaintiffs' assertions, a controlling basis of our holding in *Thorp* that the plaintiff's due process rights had been violated.

We specifically stated in *Thorp* that

[t]he effect of the 1986 amendment to the Dramshop Act requiring that the seller of intoxicants also serve them is to preclude plaintiff's cause of action against a convenience store that only sells beer.

*Id.* at 462.

We also note that our decision in *Thorp* was filed two years ago. If the legislature, in its 1986 amendment, had intended something other than our construction in *Thorp*, it has had ample opportunity to indicate as much. *Cf.* Iowa Code § 123.49(1) (1987), *overruling Clark v. Mincks*, 364 N.W.2d 226 (Iowa 1985). Thus, since Sinclair's store is of the same type of store as the convenience store involved in *Thorp*, *i.e.*, one that only "sells" alcohol for off-premises consumption, it follows from the language in *Thorp* that the dramshop act does not apply to Sinclair.

■ B. *Construction of the dramshop act.* Plaintiffs nevertheless assert that the statements in *Thorp* are contrary to a proper construction of the dramshop act. They argue that the "sold and served" language should be read to apply to *all* permittees and licensees, including those that do not sell and serve alcohol for on-premises consumption. More specifically, plaintiffs say that a permittee or licensee may be liable under the dramshop act for "selling and/or serving" alcohol to intoxicated persons.

Plaintiffs' arguments, however, ignore the fact that the legislature specifically amended the act by inserting the word "and" in place of the former word "or," and by adding the word "serve" in place of the former word "give." Any such amendment is presumed to reflect an intention on the part of the legislature that the statute be given new meaning. *State v. Phelps*, 417 N.W.2d 460, 461–62 (Iowa 1988). More specifically, when the word "or" is used in a statute, it is presumed to be disjunctive unless a contrary intent appears. *Kearney v. Ahmann*, 264 N.W.2d 768, 769 (Iowa 1978). Likewise, the word "and" is to be used as a conjunctive, requiring satisfaction of *both* listed conditions. *Casteel v. Iowa Dep't. of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986). Finally, use of the word "served" in addition to the word "sold" obviously imposes a requirement in addition to the requirement that a permittee or licensee merely "sell" the intoxicating liquor. *Accord, Sawyer v. Frank*, 152 Iowa 341, 344, 131 N.W. 761, 762 (1911) (legislature's use of the word "dispense" in the alternative with "sell" indicates an intent that the word is used to describe an independent and distinct method of disposal of liquor) (cited in *Thorp*, 446 N.W.2d at 465).

The foregoing rules of statutory construction require us to conclude that before dramshop liability may be imposed upon a permittee or licensee, a plaintiff must prove, at a minimum, that an intoxicated person was both "sold" *and* "served" intoxicating liquor. To fulfill this dual requirement, a plaintiff must prove, not only that a "sale" occurred, but also that a permittee or licensee actually "served" intoxicating liquor, with the intent that it be consumed on the premises. *Accord, Treasure Island Catering Co., Inc. v. State Bd. of Equalization*, 19 Cal.2d 181, 187, 120 P.2d 1, 5 (1941) (one who merely prepares a sandwich for consumption without offering any facilities for its consumption on the premises and with intent that it be consumed elsewhere has not "served" a meal within the meaning of retail sales tax act). A plaintiff may meet this burden in specific instances by demonstrating that an establishment where alcohol is sold generally holds itself out as a place where persons are "served" in the ordinary sense of the word, *i.e.*, one providing premises where orders are taken, patrons are waited on, and drinks are supplied in open containers. *See id.* at 185, 120 P.2d at 4 (vendor's

"premises" could not be defined as an area over which vendor had no control or which was open to the public and not merely for the accommodation of vendor's customers).

Plaintiffs argue that the class of establishments to which the dramshop act applies should not be defined by the types of facilities those establishments offer their patrons. Plaintiffs' objection, however, ignores the realities of the liquor trade. As a practical matter, a patron wishing to obtain alcohol can do so in only one of two ways: by purchasing it for on-premises consumption or by purchasing it for off-premises consumption. Those establishments that wish to provide alcohol to their patrons exclusively for off-premises consumption may do so by merely "selling" it to their patrons. However, those establishments wishing to provide alcohol for on-premises consumption must not only "sell" it to their patrons, but must also "serve" it to them on facilities provided for that very purpose. Since the post–1986 dramshop act specifically applies only to those establishments that both "sell" *and* "serve" alcohol, we find it impossible to construe the act as applying to anything other than only those establishments providing facilities for on-premises consumption.

■ C. *"Serving" versus "consuming" alcohol.* Finally, plaintiffs imply that construing section 123.92 to require a showing that a dramshop both "sell" and "serve" alcohol would be inconsistent with this court's holding in *Thorp* that a plaintiff need not prove that the patron actually "consumed" a dramshop's alcohol in order to maintain a claim. 446 N.W.2d at 467. We disagree. Our conclusion today is fully consistent with our holding in *Thorp* because a requirement that a plaintiff prove that the patron was "served" alcohol for on-premises consumption does not mean that a plaintiff must also prove that the patron in fact "consumed" it. Indeed, the two words have two entirely different meanings, a fact which we implicitly recognized by our holding in *Thorp*.

We have considered plaintiffs' other contentions on this issue and find them with-out merit. Accordingly, we hold that before a permittee or licensee may be exposed to liability under the dramshop act, Iowa Code section 123.92 (1989), a plaintiff must prove that the permittee or licensee both sold *and* served alcohol to an intoxicated person with the intent that the alcohol be consumed on the premises.

We therefore affirm the ruling of the district court granting Sinclair's summary judgment motion as to plaintiffs' dramshop actions against Sinclair.

■ III. *Equal protection claim.* We next must consider whether application of section 123.92, Iowa's Dramshop Act, to preclude liability against defendant Sinclair, a non-tavern licensee, violates the equal protection clauses of the United States and Iowa constitutions. U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. We conclude that it does not.[1]

For purposes of this analysis, plaintiffs define the classifications created by the statute as (1) victims of persons who were sold and served alcohol by a tavern for on-premises consumption, and (2) victims of persons who were sold alcohol by a non-tavern for off-premises consumption. Plaintiffs believe that the dramshop act violates equal protection guarantees insofar as it treats similarly situated victims differently depending upon whether the intoxicated consumer purchased beer or intoxicating liquor in a tavern as opposed to a non-tavern.

We have recognized, however, that the equal protection clause is not violated if the challenged law operates equally upon those persons or classes of persons intended to be affected as a result of a valid exercise of the legislature's lawmaking power. *See Train Unlimited Corp. v. Iowa Ry. Fin. Auth.,* 362 N.W.2d 489, 495 (Iowa 1985). Plaintiffs Kelly and Den Adel have not demonstrated that the dramshop act operates unequally upon those persons intended to be affected thereby, *i.e.,* those persons who are injured as a result of intoxicated persons who were sold and served alcohol by a tavern. Plaintiffs may not sustain

1. The district court impliedly found that no   equal protection violation existed.

their equal protection claim merely by showing that non-tavern permittees such as Sinclair have a different legal status than other permittees that sell and serve alcohol for on-premises consumption. *See Allied Mut. Ins. Co. v. State*, 473 N.W.2d 24, 27 (Iowa 1991). The fact that the legislature chose not to provide a claim against some vendors of intoxicating beverages does not give rise to an equal protection violation. *Accord Fuhrman v. Total Petroleum, Inc.*, 398 N.W.2d 807, 810 (Iowa 1987) (dramshop act calls for a carefully limited class of persons to whom recovery rights were given); *Ry. Express Agency v. New York*, 336 U.S. 106, 110, 69 S.Ct. 463, 466, 93 L.Ed. 533, 539 (1949) (it is no requirement of equal protection that the legislature eradicate all potential evils or none at all).

■ In any event, we do not believe that the dramshop act otherwise violates equal protection guarantees. All parties agree that the appropriate standard to use in determining whether the dramshop act violates equal protection guarantees is the rational basis test. Under that standard, a statute is constitutional unless the challenged classification is patently arbitrary and bears no rational relationship to a legitimate state purpose. *Ruden v. Parker*, 462 N.W.2d 674, 676 (Iowa 1990); *Bennett v. City of Redfield*, 446 N.W.2d 467, 474 (Iowa 1989). Statutes are presumed constitutional and the burden rests on the challenger to demonstrate that a statute violates equal protection guarantees. *Id.*

■ Our first task is to determine whether section 123.92 promotes a legitimate state purpose. The purpose of Iowa's Dramshop Act is to discourage the serving of excess liquor to patrons. *Rigby v. Eastman*, 217 N.W.2d 604, 608 (Iowa 1974). Its purpose is also to provide a mode of relief to innocent victims harmed by those who contribute to the serving of excess liquor. *Slager v. HWA Corp.*, 435 N.W.2d 349, 351 (Iowa 1989). It is undisputed that these are legitimate state purposes, designed for the "protection of the welfare, health, peace, morals, and safety of the people of the state" of Iowa. *See* Iowa Code § 123.1.

Our second task is to determine whether the classification established by section 123.92 promotes these legitimate state purposes. We conclude that it does for two related reasons. First is the fact that, where alcohol is served for on-premises consumption, it is consumed in the permittee's or licensee's facilities where the permittee or licensee owner or employees have the opportunity to observe their patrons' consumption and behavior. It is entirely rational for the legislature to conclude that such permittees and licensees be held to a higher standard of care in preventing the consumption of alcohol by intoxicated patrons.

Furthermore, permittees and licensees who sell alcohol exclusively for off-premises consumption have no control over their patrons once those patrons make their purchases and leave the premises. Although some of those patrons may purchase alcohol for immediate consumption, many of those patrons often purchase it intending to consume it at some undetermined time in the future. The legislature thus could have rationally concluded that the purposes of the dramshop act would not be furthered by imposing upon such permittees and licensees a standard of care equivalent to that imposed upon permittees and licensees that both sell and serve alcohol for on-premises consumption.

Accordingly, we hold that plaintiffs may not maintain that the dramshop act violates equal protection guarantees by claiming that it treats similarly situated victims differently depending upon whether the intoxicated consumer purchased beer or intoxicating liquor in a tavern as opposed to a non-tavern. Additionally, the distinction which section 123.92 makes between permittees and licensees which sell and serve alcohol for on-premises consumption and those which sell it for off-premises consumption does not otherwise violate the equal protection guarantees of the United States and Iowa constitutions.

IV. *Common law negligence claim against Sinclair.* Plaintiffs' petitions al-

lege a common law negligence claim and contend that Sinclair should be liable to plaintiffs for selling beer, in violation of Iowa Code section 123.49(1), to an intoxicated Giannetto, who later entrusted his truck to Bryant, whose use of it in turn injured the plaintiffs.

The district court overruled Sinclair's summary judgment motion as to this claim, holding that a plaintiff may maintain a common law claim against a licensee or permittee who is not otherwise covered by the dramshop act. Iowa Code § 123.92. Sinclair cross-appeals from that ruling.

Iowa Code section 123.49(1) prohibits a person from selling, dispensing, or giving any intoxicant to an intoxicated person. For purposes of this appeal, we assume, without deciding, that section 123.49(1) establishes a minimum standard of care for conduct generally required of the reasonably prudent person under like circumstances for purposes of a common law negligence action based on the sale or furnishing of intoxicating liquor.[2] We conclude that, even assuming plaintiffs Kelly and Den Adel may maintain such a common law claim against Sinclair, Sinclair's conduct in selling Giannetto alcohol was not, as a matter of law, a proximate cause of plaintiffs' injuries.

■ A. *Proximate and superseding causes.* Proximate causation presents the question of whether the policy of the law will extend responsibility to those consequences which have in fact been produced by an actor's conduct. *State v. Marti*, 290 N.W.2d 570, 585 (Iowa 1980). The general rule is that an actor's conduct is the proxi-

mate or legal cause of harm to another if (1) his conduct is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the actor of liability because of the manner in which his negligence resulted in the harm. *See Smith v. Shaffer*, 395 N.W.2d 853, 857 (Iowa 1986); *Winter v. Honeggers' & Co., Inc.*, 215 N.W.2d 316, 320 (Iowa 1974). Factors to consider in determining whether an actor's conduct is a proximate cause of a plaintiff's injury include the proximity and foreseeability of the harm flowing from the actor's conduct, although it is not necessary that the actual consequences of a defendant's negligence should have been foreseen. *See Nachazel v. Miraco Mfg.*, 432 N.W.2d 158, 160 (Iowa 1988) (injuries must be the natural, though not inevitable, result of the wrong); *Cronk v. Iowa Power & Light Co.*, 258 Iowa 603, 613, 138 N.W.2d 843, 848–49 (1965); *Christianson v. Kramer*, 255 Iowa 239, 249–50, 122 N.W.2d 283, 289 (1963); *see also* Restatement (Second) of Torts §§ 433, 435 (1965).

■ When conduct or forces occur after an actor's conduct, however, the actor may be relieved of liability if a court finds that the later-occurring event is such as to break the chain of causal events between the actor's negligence and the plaintiff's injury. This is so even when the actor's conduct is a cause-in-fact of the plaintiff's harm. *See Brichacek v. Hiskey*, 401 N.W.2d 44, 48 (Iowa 1987); *Shaffer*, 395 N.W.2d 853, 857; *Iowa Elec. Light and Power Co. v. General Elec. Co.*, 352 N.W.2d 231, 235 (Iowa 1984); *Schnebly v. Baker*, 217 N.W.2d 708, 729 (Iowa 1974)

---

**2.** We note, however, that we have often said that the dramshop act provides the exclusive remedy against those covered by the act: *licensees and permittees. See, e.g., Slager*, 435 N.W.2d at 352; *Bauer v. Dann*, 428 N.W.2d 658, 660 (Iowa 1988); *Blesz v. Weisbrod*, 424 N.W.2d 451, 452 (Iowa 1988); *accord, Fuhrman*, 398 N.W.2d 807 (no common law cause of action against permittees even for those acts falling outside the dramshop act); *Connolly v. Conlan*, 371 N.W.2d 832 (Iowa 1985) (same); *see also Haafke v. Mitchell*, 347 N.W.2d 381, 385 (Iowa 1984) (common law cause of action not preempted if act of permittee is not covered by the act). More importantly, this court has *never* said that a common law negligence action may be maintained against a

licensee or permittee that provides alcohol to an *intoxicated person* in violation of Iowa Code section 123.49(1). *See Snyder v. Davenport*, 323 N.W.2d 225 (Iowa 1982) (dramshop act usurps a common law negligence action against a licensee grounded on the sale of intoxicants to an intoxicated person in violation of section 123.-49(1)); *see also Thorp*, 446 N.W.2d at 464–65 (holding state liable under principles of *respondeat superior* for acts of its non-permittee-employee); *Slager*, 435 N.W.2d at 352; *Haafke*, 347 N.W.2d at 388; *accord Bauer*, 428 N.W.2d 658 (involving illegal sale to a minor); *Fuhrman*, 398 N.W.2d 807 (same); *Connolly*, 371 N.W.2d 832 (same); *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977) (same).

(actor's conduct and intervening event may be regarded as concurring legal causes depending on circumstances). *See generally* Restatement (Second) of Torts §§ 440–43, 447–49 (1965). More specifically, where a patron's intoxication does nothing more than furnish a condition by which an injury is made possible by subsequent independent intervening events, the intervening events, not the intoxication, are the direct and immediate cause of the injury. *See generally* 45 Am.Jur.2d, *Intoxicating Liquors* § 585, at 876 (1969).

■ In the present case, plaintiffs seek to impose liability upon Sinclair for the injuries they sustained in the accident with Bryant. We conclude, however, that Sinclair may not be exposed to such liability; this case is one of those exceptional cases where we decide the proximate cause issue as a matter of law. *See* Iowa R.App.P. 14(f)(10). More specifically, we conclude that, as a matter of law, plaintiffs' injuries were not the proximate, foreseeable result of Sinclair's conduct in selling Giannetto beer or intoxicating liquor because Sinclair's conduct was not a "substantial factor" giving rise to those injuries; the acts of Giannetto and Bryant were "superseding" events.

We find support for this conclusion in *Gremmel v. Junnie's Lounge, Ltd.*, 397 N.W.2d 717 (Iowa 1986). In *Gremmel*, the plaintiff, a patron of Junnie's Lounge, was injured in a fight with three assailants, who also were patrons of the lounge. *Id.* at 719. The plaintiff thereafter brought a dramshop suit against the lounge based on assault. *Id.* The lounge defended, however, on the basis that the assailants' intoxication was not a proximate cause of plaintiff's injuries; *i.e.*, that this did not contribute to the assailants' propensity to fight with plaintiff. *Id.* at 721. We agreed, concluding that a prior incident between the plaintiff and one of his assailants, coupled with the exchange of words between plaintiff and that assailant while at the lounge, supported a reasonable inference that the ill-feeling between the two, rather than the intoxication, led to the assault. *Id.*

The holding in *Gremmel* supports our conclusion in this case that Sinclair's conduct in selling Giannetto alcohol was not, as a matter of law, a proximate cause of plaintiffs' injuries. This conclusion is based primarily upon the fact that this case involves two events which intervened between Sinclair's sale of alcohol to Giannetto and Bryant's accident with the Den Adel vehicle, whereas in *Gremmel*, there was only one intervening event. More specifically, the chain of events involved in *Gremmel* began with the lounge's serving of alcohol to the assailants, followed by the assailants' fight with the plaintiff, resulting in plaintiff's injuries. However, Sinclair's act of selling alcohol to Giannetto was twice-removed from the injuries of Kelly and Den Adel: the chain of events began with Sinclair's sale of alcohol to Giannetto, followed by Giannetto's alleged negligent entrustment of his truck to Bryant,[3] followed by Bryant's illegal act of driving the truck while intoxicated, resulting in plaintiffs' injuries. We acknowledge that there need not be a certain number of

---

3. For purposes of this discussion, we assume, without deciding, that Giannetto did in fact "entrust" his truck keys to Bryant. However, we note that "entrust" has been defined as follows:

> to commit or surrender something to another with a certain confidence regarding his care, use or disposal of it.... *The term means more than* naked possession or custody of, or access to, the property appropriated.

48A C.J.S. *Intrust or Entrust*, at 208 (1981) (emphasis supplied).

It has also been said that

> [l]iability for the negligence of an incompetent or reckless driver to whom a motor vehicle is entrusted does not arise out of the relationship of the parties, but from the act of

entrustment of the motor vehicle, *with permission to operate it....*

7A Am.Jur.2d, *Automobiles and Highway Traffic* § 643, at 872 (1980) (emphasis supplied).

The depositions show that when Giannetto gave Bryant the keys to his truck, he told Bryant to wait in the truck and not to move it. This indicates that Giannetto merely gave Bryant *access to* his truck; he never "surrendered" it to him "to use or dispose of," nor did he give Bryant permission to operate it. Of course, this issue ultimately would be one for the trier-of-fact, especially in light of Bryant's testimony that Giannetto had allowed Bryant to drive his truck on previous occasions. *See* 57A Am.Jur. 2d, *Negligence* § 333, at 345 (1989).

intervening events between a defendant's conduct and a plaintiff's injuries in order for a court to relieve the defendant of liability. Nevertheless, the number of intervening events is certainly a factor in considering the proximity and foreseeability of the harm flowing from the defendant's conduct.

Since the chain of events in *Gremmel* was sufficient to support a jury verdict that the lounge's conduct was not a proximate cause of plaintiff's injuries, we believe we are justified in this case in holding that, as a matter of law, Sinclair's conduct was not a "substantial factor" in bringing about the injuries of Kelly and Den Adel. *Shaffer*, 395 N.W.2d at 857; *Winter*, 215 N.W.2d at 320; *see also* Restatement (Second) of Torts §§ 442A, 442B, 443 (1965). As was true of the assailants in *Gremmel*, Giannetto's intoxication did not contribute to any "propensity" he may have had to later negligently entrust his truck to Bryant while the group was at Boot Hill's tavern; it was the simple fact that Bryant was a minor who by law could not be served alcohol by a licensee or permittee such as Boot Hill, and who was rightfully ordered off of Boot Hill's premises by bartender Goulden. It was for *this* independent reason that Giannetto gave Bryant his truck keys. *See Brichacek*, 401 N.W.2d at 48; *Schnebly*, 217 N.W.2d at 729; *Bistline v. Ney Bros.*, 134 Iowa 172, 180, 111 N.W. 422, 425 (1907) (liquor seller may not be held liable for injuries which are in no manner connected with the intoxication of the person in question). *See generally* Restatement (Second) of Torts § 442(c) (1965).

By merely selling alcohol to Giannetto, even assuming Giannetto was intoxicated at the time, Sinclair was not in any way responsible for the conduct of Bryant, a non-patron who never entered Sinclair's convenience store and who was intoxicated from drinking alcohol procured from other sources. *Accord Shaffer*, 395 N.W.2d 853 (tavern owners did not have affirmative duty to inform authorities that intoxicated minors were on their premises after curfew; owners were not liable for damages caused by minors after they left taverns, stole a car, and drove off in intoxicated condition).

We note that our conclusion that Sinclair's conduct in selling Giannetto beer was not a proximate cause of plaintiffs' injuries is supported by cases from other jurisdictions. One such case is *Boyd v. Fuel Distributors, Inc.*, 795 S.W.2d 266 (Tex.Ct.App.1990). In construing Texas' dramshop act, the *Boyd* court held that the intoxication of a minor-passenger who had purchased alcohol for consumption by himself and the driver could not be the cause-in-fact of an automobile accident so as to support the imposition of liability on the store which had wrongfully sold the minor-passenger the alcohol. The court held as it did even though plaintiff argued that but for the passenger's intoxication and his persuasion of the driver that they should go for a ride despite their intoxicated condition, the driver would not have been driving. *Id.* at 272. We likewise conclude that Sinclair may not be held liable for plaintiffs' injuries even though, but for Giannetto's intoxication and his alleged negligent entrustment of his truck to Bryant, Bryant would not have been driving. Indeed, Giannetto's alleged negligent entrustment would have occurred even if he had had nothing to drink that night. *See id.*

Other cases include *Crea v. Bly*, 298 N.W.2d 66 (Minn.1980), holding that a dramshop's mere serving of liquor to an intoxicated woman was not the proximate cause of injuries later inflicted on the plaintiff by the woman's boyfriend, where the woman had encouraged her boyfriend to inflict the injuries, and *Rio v. Minton*, 291 So.2d 214 (Fla.Dist.Ct.App.1974), *cert. denied*, 297 So.2d 837 (Fla.1974), holding that it was not probable or reasonably foreseeable that a non-patron adult would negligently entrust his vehicle to a minor who had consumed alcohol on the defendant's premises. These cases support our conclusion that Sinclair, twice-removed from the conduct that actually resulted in plaintiffs' injuries, should not be exposed to liability in light of the superseding acts of Giannetto's alleged negligent entrustment and Bryant's illegal operation of Giannetto's truck.

B. *Summary.* For the foregoing reasons, we hold that, as a matter of law, Sinclair's conduct in selling Giannetto alcohol was not a proximate cause of plaintiffs' injuries. Even assuming it may be reasonably foreseeable that intoxicated persons such as Giannetto who purchase liquor from non-tavern permittees may in turn provide instrumentalities to third parties such as Bryant, we do not believe this justifies imposing liability upon permittees, such as Sinclair's convenience store or other grocery stores, that sell alcohol exclusively for off-premises consumption. Such a holding would result in imposing liability upon permittees for the conduct of non-patrons occurring weeks, months, or even years after the initial sale of the alcohol, thus making such permittees liable for acts over which they have absolutely no control whatsoever.

Accordingly, we reverse the judgment of the district court overruling Sinclair's summary judgment motion.

V. *Dramshop action against Boot Hill.* Plaintiffs contend that Boot Hill is liable to them under the dramshop act for serving alcohol to Giannetto when it "knew or should have known" he was intoxicated. Iowa Code § 123.92. This conduct in turn is alleged to have contributed to Giannetto's negligence in entrusting his truck keys to Bryant, who was also intoxicated.

In other words, plaintiffs argue that Boot Hill may be held liable for Bryant's act of colliding with the Den Adel vehicle, even though Boot Hill only sold and served alcohol to Giannetto and not to Bryant; that Boot Hill's act in serving Giannetto was a proximate cause of plaintiffs' injuries.

The district court sustained Boot Hill's summary judgment motion as to plaintiffs' claims. For the same reasons outlined in the previous division of this opinion, we affirm. More specifically, we conclude that the conduct of Boot Hill in serving Giannetto beer was not, as a matter of law, a proximate cause of the injuries of plaintiffs Kelly and Den Adel.[4]

■■■ A. *Burden of proving proximate cause.* As an initial matter, we note that plaintiffs Kelly and Den Adel carry the burden of proving that Boot Hill's conduct contributed to plaintiffs' injuries. The dramshop act provides that "[i]f the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action" of the intoxicated person. Iowa Code § 123.92. However, this clause eliminates the plaintiff's burden of proving proximate cause only where the injury is caused *by* the intoxicated person.

In those cases, such as the one before us, where a plaintiff alleges injuries *resulting from* the intoxication of a person, the plaintiff carries the burden of establishing that the licensee's or permittee's conduct was a proximate cause of those injuries. *Walton v. Stokes,* 270 N.W.2d 627, 628 (Iowa 1978); *Lee v. Hederman,* 158 Iowa 719, 722–23, 138 N.W. 893, 894–95 (1913) (construing former dramshop act allowing plaintiff to recover for injuries "in consequence of" another's intoxication); *Bistline,* 134 Iowa at 180, 184, 111 N.W. at 425–26 (same); 45 Am.Jur.2d *Intoxicating Liquors,* §§ 583–585, at 873–877 (1969); Schubert, *The Iowa Dram Shop Act—Causes of Action and Defenses,* 23 Drake L.Rev. 16, 21 (1973).

■■■ B. *Proximate and superseding causes.* As stated above, plaintiffs seek to impose liability upon Boot Hill for the injuries they sustained in the accident with Bryant. We conclude, however, that Boot Hill may not be exposed to such liability. More specifically, we conclude that, as a matter of law, plaintiffs' injuries were not the proximate, foreseeable result of Boot Hill's conduct in serving Giannetto beer or intoxicating liquor because Boot Hill's conduct was not a "substantial factor" giving rise to those injuries; the acts of Giannetto and Bryant were "superseding" events.

---

**4.** The parties dispute whether Giannetto was actually served at Boot Hill's tavern before or after he entrusted his truck to Bryant. For purposes of this appeal, we assume, without deciding, that Giannetto was in fact served before he surrendered his truck keys to Bryant.

As was the case in our above disposition of plaintiffs' claims against Sinclair, *Gremmel* supports our conclusion here that Boot Hill's conduct in serving Giannetto alcohol was not, as a matter of law, a proximate cause of plaintiffs' injuries. This conclusion again is based upon the fact that this case involves two events which intervened between Boot Hill's serving of Giannetto and Bryant's accident with the Den Adel vehicle, whereas in *Gremmel*, there was only one intervening event. Boot Hill's act of serving Giannetto was twice-removed from the injuries of Kelly and Den Adel: the chain of events began with Boot Hill's serving of alcohol to Giannetto, followed by Giannetto's alleged negligent entrustment of his truck to Bryant, followed by Bryant's illegal act of driving the truck while intoxicated, resulting in plaintiffs' injuries.

Thus, Boot Hill's conduct was not a "substantial factor" in bringing about the injuries of Kelly and Den Adel. *Shaffer*, 395 N.W.2d at 857; *Winter*, 215 N.W.2d at 320; *see also* Restatement (Second) of Torts §§ 442A, 442B, 443 (1965). Giannetto's intoxication did not contribute to any "propensity" to negligently entrust his truck to Bryant; it was the simple fact that Bryant was a minor who by law could not be served alcohol by a licensee or permittee, and who was rightfully ordered off the premises by bartender Goulden. It was for *this* independent reason that Giannetto gave Bryant his truck keys. *See Brichacek*, 401 N.W.2d at 48; *Schnebly*, 217 N.W.2d at 729; Restatement (Second) of Torts § 442(c) (1965). By merely serving Giannetto, even assuming Giannetto was intoxicated at the time, Boot Hill was not in any way responsible for the conduct of Bryant, a non-patron, who was intoxicated from drinking alcohol procured from other sources, and who illegally drove the truck which caused plaintiffs' injuries.

C. *Summary.* For the foregoing reasons, we hold that, as a matter of law, Boot Hill's conduct in serving Giannetto alcohol was not a proximate cause of plaintiffs' injuries.

We acknowledge that imposing liability upon Boot Hill would promote one of the primary objectives of the dramshop act, which is to provide a mode of relief to innocent victims harmed by those who contribute to the serving of excess liquor. *Slager*, 435 N.W.2d at 351. However, to impose liability upon a licensee or permittee in these circumstances would open the floodgates to a plethora of lawsuits, exposing licensees and permittees to almost limitless liability. Of course, this would not serve one of the other key purposes of the dramshop act, which is to discourage the serving of excess liquor to patrons. *Rigby*, 217 N.W.2d at 608. This is so because a dramshop owner may find that even when he does what is legally required of him, *i.e.*, refuse to serve a minor, he may nevertheless be exposed to liability for the conduct of that minor long after the minor was ordered off the premises. Indeed, it would be inconsistent for us to conclude, on the one hand, that bartender Goulden did not breach any legally recognized duty when he ordered an intoxicated Bryant onto the public roadway,[5] and also to conclude, on the other hand, that Boot Hill's conduct in serving Giannetto somehow is a proximate cause of the accident between Bryant and Butcher and Den Adel.

In light of our holding in this division, we find it unnecessary to consider plaintiffs' other contentions. Accordingly, we affirm the judgment of the district court sustaining Boot Hill's summary judgment motion concerning the dramshop counts of plaintiffs' petitions.

VI. *Bartender Goulden's duty to plaintiffs.* Plaintiffs contend that bartender Goulden's actions fell below a standard of care to plaintiffs when he ordered Bryant out of the Outer Limits parking lot and onto the public roadway.[6] They argue that, although there is no duty to assist a

---

5. See Division VI of this opinion, below.

6. Plaintiffs' petitions claim that both Boot Hill and Goulden fell below a standard of care by their actions. Plaintiffs' claim against Boot Hill is essentially grounded on principles of *respondeat superior* since Boot Hill was Goulden's employer.

person in peril, when an actor such as Goulden "affirmatively acts" by directing an intoxicated person onto a public roadway, the actor must act non-negligently. Boot Hill and Goulden argue that there is no duty imposed upon an actor, such as Goulden, absent a special relationship between the actor and third persons such as plaintiffs.

The district court granted Boot Hill and Goulden's summary judgment motion on this claim, ruling that Goulden breached no legally recognized duty. We agree with this conclusion and affirm.

■ A fundamental principle of tort law is that the violation of a legal right by a wrongdoer is a prerequisite to obtain redress for a claimed wrong. *Engstrom v. State,* 461 N.W.2d 309, 315 (Iowa 1990). It is therefore necessary to establish a duty owed the injured party by the wrongdoer, and a violation of that duty. *Id.*

■ The general rule at common law is that a person has no duty to prevent a third person from causing harm to another. *Anthony v. State,* 374 N.W.2d 662, 668 (Iowa 1985). In certain negligence cases, however, the existence of a legal duty may be based upon a special relationship between the parties. This may be true for those claims, such as the one before us, which are based on an alleged failure of a wrongdoer to control the conduct of a third party or to aid or protect another. *Keller v. State,* 475 N.W.2d 174, 179 (Iowa 1991); *Sankey v. Richenberger,* 456 N.W.2d 206, 209 (Iowa 1990). *See generally* Restatement (Second) of Torts § 314 comment *c* (1965) (liability for non-feasance is largely confined to situations in which there is some special relation between the parties). The Restatement (Second) of Torts specifically provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives the other a right to protection.

Restatement (Second) of Torts § 315 (1965). The issue of whether a particular duty arises out of parties' relationships is always a matter of law for the court to decide. *Engstrom,* 461 N.W.2d at 315.

■ According to these principles, which we believe control the present case, we conclude that bartender Goulden owed no duty to either Bryant or to Butcher and Den Adel because (1) there was no special relationship between Goulden and Bryant which imposed a duty upon Goulden to control Bryant's conduct; and because (2) there was no special relationship between Goulden and Butcher and Den Adel which gave the latter a right to protection. More specifically, the relationships, if any, between Goulden and Bryant, and between Goulden and Butcher and Den Adel, fall into none of those "special" relationships outlined in the Restatement (Second) of Torts. *See* Restatement (Second) of Torts §§ 314A, 314B, 316–20 (1965).

This conclusion is supported by, *inter alia, Shaffer,* 395 N.W.2d 853 *and Hildenbrand v. Cox,* 369 N.W.2d 411 (Iowa 1985) *and Ewoldt v. City of Iowa City,* 438 N.W.2d 843 (Iowa App.1989). *Hildenbrand* and *Ewoldt* both addressed the duties police officers owe either to certain classes of individuals or to the public at large. *Hildenbrand* held that a police officer had no common law duty to an intoxicated individual to detect that individual's intoxicated condition in order to protect him. 369 N.W.2d at 415. *Ewoldt* similarly held that a police officer had no duty to take a mentally ill person into custody in order to protect either that person or other members of the public who were endangered by that person. 438 N.W.2d at 843; *see also Sankey,* 456 N.W.2d at 209; *Fitzpatrick v. State,* 439 N.W.2d 663, 667–68 (Iowa 1989).

The most recent and relevant case we have considered, however, is *Shaffer,* where we held that certain tavern owners did not have an affirmative duty to inform the authorities and parents that intoxicated

juveniles were on their premises after curfew. 395 N.W.2d at 855. The tavern owners thus were not liable for damages caused by the juveniles after they left the taverns, stole a car, and drove off in an intoxicated condition. *Id.* In support of our holding in *Shaffer*, we stated:

> *At most a bar owner is required to order minors to leave the premises.* It scarcely needs pointing out that the accident in question did not occur by reason of youths being illegally in the taverns. The difficulties arose after they left. We have found no statute or ordinance, and none has been cited by the plaintiffs, which would require a tavern owner to assume an affirmative duty to notify authorities of an intoxicated minor's illicit presence in the tavern. *Such a requirement* would be tantamount to making informants out of bar owners and *would represent an unjustifiable extension of the scheme devised by the legislature in the dramshop statute.*

*Id.* at 855–56 (emphasis supplied).

We believe these statements lead inexorably to the conclusion that Goulden did not breach any legally recognized duty when he ordered Bryant, a minor who had no right to be at the Outer Limits in the first place, out of the Outer Limits parking lot after Goulden ascertained that Bryant was doing nothing more than being a nuisance to other motor vehicles on the premises. We also believe this conclusion is supported by cases from other jurisdictions with fact patterns similar to the case presently before us. *See, e.g., Knighten v. Sam's Parking Valet,* 206 Cal.App.3d 69, 253 Cal. Rptr. 365 (1988) (restaurants and valet services have no duty to withhold automobiles from intoxicated patrons); *Andrews v. Wells,* 204 Cal.App.3d 533, 251 Cal.Rptr. 344 (1988) (bartender breached no duty by failing to act on an inebriated customer's request to arrange transportation home absent a special relationship with the customer); *Lather v. Berg,* 519 N.E.2d 755 (Ind. Ct.App.1988) (social host could incur no liability for ordering an intoxicated person off the premises; no duty arose because there was no special relationship with the inebriate); *Hostetler v. Ward,* 41 Wash.App. 343,

704 P.2d 1193 (1985) (no imposition of civil liability where defendant, *inter alia,* directed allegedly intoxicated minors onto public roadway).

Finally, we acknowledge our dictum in *Hildenbrand* that "[o]ur court early recognized that intoxication can be a circumstance giving rise to such a special relationship." 369 N.W.2d at 415. In making this statement, we relied on *Weymire v. Wolfe,* 52 Iowa 533, 3 N.W. 541 (1879), where we held that a tavern-owner could not, as a matter of law, escape liability where he ordered an "unconscious" and helpless drunkard out into the cold, resulting in the drunkard's death. We do not believe that the holding in *Weymire* is controlling in this case because the facts in that case involved arguably outrageous conduct by the defendant. Indeed, the Restatement (Second) of Torts has acknowledged that there may be an exception to the general rule that there is no duty to act for the protection of others in those "extreme cases of morally outrageous and indefensible conduct." Restatement (Second) of Torts § 314 comment *c* (1965).

Unlike the facts in *Weymire,* we do not believe the facts of this case fall into this "outrageousness" exception. We agree with the statements of the district court that it would be "outrageous" to impose, on the one hand, a legal duty on bar-owners to refrain from permitting minors to be business invitees, while on the other hand declaring that bar-owners owe a duty to control the conduct of those same minors after refusing to serve them.

Accordingly, we affirm the ruling of the district court granting Boot Hill and Goulden's summary judgment motion as to plaintiffs' common law claims against them.

VII. *Disposition.* In summary, we affirm the district court's ruling which sustained Sinclair's summary judgment motion concerning plaintiffs' dramshop actions, and we find no equal protection violation thereby. We also affirm the district court's ruling which sustained the summary judgment motion of Boot Hill and

Goulden concerning plaintiffs' dramshop and common law negligence actions.

We reverse the district court's ruling which overruled Sinclair's summary judgment motion concerning plaintiffs' common law negligence actions against Sinclair.

The case is remanded for further proceedings consistent with this opinion. Costs on appeal shall be taxed to plaintiffs.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except LARSON, J., and LAVORATO, J., who concur in part and dissent in part.

LARSON, Justice (concurring in part, dissenting in part).

I agree with the majority that the bar employee who ejected the minor driver did not breach a recognized duty to the plaintiffs. I do not agree, however, with the majority's conclusion that the acts of the convenience store and bartender could not, as a matter of law, be proximate causes of the collision. I strongly disagree with the majority's failure to resolve the paramount issue: whether we will recognize a common-law claim against a licensee in a case which falls outside the coverage of the dramshop statute.

### I. *The Common–Law Claim.*

It is no secret that this court has been deeply divided on extending common-law liability to liquor cases. The primary impediment has been the view that the legislature has preempted all common-law liability of licensees, even for acts of the licensee that fall outside the coverage of the act. This view, with which I have consistently and stridently disagreed, is that if *any* acts of a licensee are covered by the dramshop statute then *all* acts of the licensee are immunized from common-law suit, even those acts which are not covered by the statute. I believe this court has erred in applying preemption principles so broadly.

Because Sinclair is a licensee, it is a party covered by section 123.92. In this case, however, Sinclair only sold the beer; it did not also serve it. Under section 123.92, Sinclair cannot be statutorily liable. *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457, 462 (Iowa 1989). I agree with the majority on that point. However, because the statute does not even purport to apply here, I believe we should recognize a common-law claim.

The public policy of our liquor control law, which includes the dramshop statute, is to promote "the protection of the welfare, health, peace, morals, and safety of the people of the state." Iowa Code § 123.1. Interpretation of our dramshop statute, and the scope of its preemption, should be viewed with this policy in mind. Recognition of a common-law cause of action, to the extent it would deter the negligent furnishing of alcohol, would further that policy.

Based largely on these considerations, we have recognized a common-law cause of action for furnishing alcohol to a minor by a *non*licensee, *Bauer v. Dann*, 428 N.W.2d 658, 661 (Iowa 1988), noting that the sale of alcohol to a minor is not an act covered by the dramshop statute.

It is a disservice to the public and a frustration of the rights of innocent victims such as these plaintiffs to continue to apply the rule of preemption in all claims against licensees, even when the statute does not apply.

The preemption argument becomes less and less defensible as the legislature continues to constrict the coverage of the dramshop statute. The dramshop statute used to apply to a broad class of suppliers, including "any person" under Iowa Code section 129.2 (1950), and to a broad class of acts by those persons, including furnishing alcohol in any manner "contrary to the provisions of this title." *Id.* A similarly broad scope of the dramshop statute prevailed until recent times; however, the statute now applies only to licensees or permittees, Iowa Code § 123.92 (1991), and for only one type of act by the licensee: the sale to an intoxicated person. *Id.* The statute now even requires that the beverage be served as well as sold. *Id.*

As long as the legislature continues to restrict the scope of the dramshop statute, and our court persists in its view that whatever rights the statute grants to victims shall be exclusive, the number of persons recovering for alcohol-caused damages by licensees will continue to diminish. In an age of increased awareness of the problems presented by drunk driving,[1] encouragement of this trend by our court should be unthinkable.

I believe our court should recognize a common-law cause of action under these circumstances; however, the majority forestalls the adoption of this theory by resolving this case on a strained, and I believe erroneous, application of proximate cause principles.

## II. *The Proximate Cause Issue.*

The majority holds that, even if we were to recognize a common-law cause of action, this would not help these plaintiffs because any negligence by the defendants could not, as a matter of law, be the proximate cause of the collision. As I understand the majority, it holds that the owner of the pickup would have entrusted his vehicle to this intoxicated minor even if the owner were not intoxicated. The driver was ejected from the bar as being too young, and because it was cold, the argument goes, the owner was somehow justified in giving his keys to the minor so he could run the pickup in the parking lot and keep warm while the owner stayed in the bar.

This is pure speculation. It is certainly not a conclusion compelled as a matter of law, as the majority seems to believe. In fact, I believe a reasonable fact finder would find just the opposite: that an owner acting reasonably under the circumstances would not give his keys to an intoxicated driver and invite him to operate his vehicle, either in the lot or on the streets. It is at least a question which a fact finder should be able to decide. It should not be decided by the court as a matter of law.

I believe the majority, by failing to give its imprimatur to a common-law cause of action, and by distorting our law of proximate cause, has created unfairness and confusion in the law, and I cannot be a part of it.

LAVORATO, J., joins this dissent.

1. According to the President's Commission on Drunk Driving, in the ten years preceding the study, 250,000 people had been killed as the result of drunk drivers. This amounts to over half of the motor vehicle fatalities. *Presidential Commission on Drunk Driving, Final Report,* 1 (1986).